GEORGE H. JACKSON, Plaintiff, *v.* EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Defendant.

Supreme Court, Kings County, January 29, 1931.

*Leon J. Shapiro,* for the plaintiff.

*Bertrand L. Pettigrew,* for the defendant.

MAY, J. In the case of James F. D. Cochenour, as administrator, etc., of William Davie Cochenour, deceased, a jury duly rendered a verdict for $2,500 in favor of the plaintiff. The defendant in that case was the landlord and owner of a tenement house in one of the apartments of which the plaintiff resided with his family, including deceased, an infant of the age of about three months. The theory of that action was that contrary to the provisions of plaintiff's lease and in violation of laws and ordinances, the defendant failed and neglected to provide sufficient heat, in the month of January, 1920, to properly heat plaintiff's apartment, but on the contrary permitted said apartment to be and continue practically throughout the said month in an unheated, cold, damp, unsafe and unhealthful condition; that solely by reason of defendant's failure in this respect and as a result thereof, the deceased was subjected to cold and exposure, causing him to become sick, resulting in his death on or about February 27, 1920; and that his death was due solely to the wrongful acts, breach of duty and violation of law by the defendant for failing to provide heat as aforesaid.

The judgment entered upon the verdict has been affirmed by the Appellate Division (*Cochenour* v. *Jackson,* 206 App. Div. 765) and the Court of Appeals (237 N. Y. 505) and has been satisfied by the defendant.

This action is brought by the owner, the defendant in the above action, upon a policy of liability insurance issued to him by the defendant herein in the month of March, 1919. The policy, with specified exceptions, covers " bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons while within or upon the premises * * * by reason of the occupation, the use, the maintenance, the ownership or the control of the said premises by the assured as described in the declaration."

It appears that the insufficiency of heat continued at intervals during the month of January and was due both to lack of coal and at times to the breaking down of the heating apparatus; that up to the time the deceased became ill — the latter part of January — he was a healthy infant about three months old; that the child became ill on January twenty-second, or on January twenty-eighth or twenty-ninth; that the treatment of the deceased infant by a doctor began about February first and the child died on February twenty-seventh. This doctor testified that at the time the treatment began the child had an acute catarrhal condition; that from the time the treatment began until the child died, the general condition of the child would improve for a day or two and then " for some reason would fall back." It would have relapses and " it kept up in that same condition for more or less 22 days until it died." The doctor further testified that the child had " a general catarrhal condition affecting the tubes of the lungs which is bronchitis, affecting the stomach, which is called gastro-enteritis, which is not necessary diarrheal, but it is a toxic state of the general system as the result of exposure and chilling of the body surfaces." He also testified that, medically, the direct cause of death was " the weakness, the exhaustion," of the child produced from this catarrhal condition, and in answer to a hypothetical question relating to the temperature of the place where the child lived preceding its illness, testified in effect that such temperature, varying as it did from time to time, was a competent producing cause " for the development of the illness " which caused the child's death.

The point of contention between the parties is whether the death of the infant for the causes and under the circumstances disclosed falls within the coverage provision of the policy. In other words: Did such death result from bodily injuries accidentally sustained?

I find no authority directly in point on the above facts, but cases decided under the provisions of the Workmen's Compensation Law and other statutes may aid in determining the construction of phrases and the definition of words.

Disclaiming any attempt to scientifically discriminate between accident and disease, or between disease and injury, the Court of Appeals has said that the tests to be applied " are those of common understanding as revealed in common speech." (*Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83, 85.)

In another case involving the question whether injuries resulting in death were effected by " accidental means " within the meaning of a policy, the court said that its point of view in fixing the meaning of the contract " must not be that of the scientist. It must be that of the average man. * * * This test — the one that is applied in

the common speech of men — is also the test to be applied by courts." (*Lewis v. Ocean Accident & Guarantee Corporation, Limited, of London, England,* 224 N. Y. 18, 21.)

The word "accident," in the point of view of the average man, conveys a sudden and instant happening, an event of the moment rather than a condition which continues to develop, progress and change through a period of time. According to the mental conception of the average man, it means a happening, not only unexpected and unusual, but one referable to a definite and fixed period of time. (*Jeffreyes v. Sager Co.,* 198 App. Div. 446, 447; affd., 233 N. Y. 535.)

Under the provisions of the Workmen's Compensation Law, it has been held that disease may be an accidental injury, where the disease is assignable "to a determinate or single act, identified in space or time," and it must be assignable to "something catastrophic or extraordinary." (*Matter of Lerner v. Rump Bros.,* 241 N. Y. 153, 155.)

And where the contraction of a disease by the inhalation of fumes was gradual and extended over a period of time, the court has held that it could find nothing "catastrophic or extraordinary" in the happenings to which to attribute the inception of the disease, and in the same case the court said: "We cannot fix time or place when a disease was contracted." It, therefore, held that a finding that disability was caused by accidental injury was not justified. (*Rosenthal v. National Aniline & Chemical Co.,* 216 App. Div. 588.)

Sunstroke, tuberculosis, pneumonia and rheumatism, although diseases, have also been classed as accidents, when resulting from causes of a sudden and catastrophic character. (*Matter of Connelly v. Hunt Furniture Co., supra,* 87, 88.)

In the present case the infant's illness covered a period of approximately one month. During this period the illness was progressive, with varying changes of condition, sometimes favorable and at other times unfavorable. The various afflictions developed during the course of the illness are designated in medical phraseology by the attending physican who gave as a direct cause of death "the weakness, the exhaustion of the child."

In this climate, in other than winter months, when heating apparatus is not in operation, there are frequently changes of temperature as pronounced as those that occurred in the apartment where this infant lived. Children of the rich as well as of the poor die of precisely the same causes as did the infant in this case, while other infants under identical conditions continue strong and robust. The average man, I think, would scarcely associate the death of this child with bodily injury.

Nothing disclosed in this case seems to me to justify the application of this rule. This infant died from disease or diseases, which terminated fatally after a continuous and progressive development of a month's duration, possibly accelerated by other causes not determinable, and not as the result of any illness occasioned by a definite, specific occurrence of a sudden and catastrophic nature. A point of distinction somewhere must be located between diseases which may not, and those which may, be classified as accidents.

Neither did the death, in my opinion, result from bodily injuries within the purview of the coverage provision. The infant had sustained no cut, abrasion or traumatic injury, whereby poisonous substances or germs entered the system. Concededly, a bodily injury may result from causes other than from the operation or effect of physical force. Usually it will be found that these are cases where there has been an occurrence associated, in the average mind, with a known result, which follows as a natural and usually inevitable consequence. Thus typhoid fever caused by drinking water containing typhoid germs, and the disease of glanders, caused by direct contact with infectious matter, have been held to come within the provision of policies insuring against bodily injuries accidentally suffered. (*Ætna Life Ins. Co.* v. *Portland Gas & Coke Co.*, [C. C. A.] 229 F. 552; *Hood & Sons* v. *Maryland Casualty Co.*, 206 Mass. 223; 92 N. E. 329.)

In cases of this character there is usually found to be a definite bodily affliction which usually and almost inevitably follows an ascertained cause. In such cases there is a direct and immediate connection between cause and effect. The average person accepts the result as the ordinary consequence of an ascertained and catastrophic happening. But the circumstances connected with the death of this infant, in my opinion, do not similarly appeal to the average mind. The insufficiency of the heating in varying degrees continued for nearly two months before death ensued. The inception of the illness of this infant cannot be attributed to inadequate heating at any particular time, and the extent to which other causes contributed to the fatality is merely conjectural. A variety of causes other than a lack of sufficient heat may account for such disease and its inception and fatal termination often cannot be assigned to any definite and ascertained cause. In my opinion the lack of a cause relatively definite in point of time, catastrophic in character, and followed by a usual if not inevitable result, distinguishes the present case from those dealing with typhoid occasioned by drinking typhoid germs, tuberculosis caused by the sudden inhalation of poisonous fumes, glanders contracted by direct contact with infected substances, and other kindred cases.

So far as the other provisions cf the policy are of aid in this connection they are adverse to such contention.

Agreement V seems to contemplate " accidents " within the commonly accepted meaning of that word, as occurrences or happenings likely to produce traumatic injuries.

In reaching this conclusion I am not unmindful that policies of insurance are liberally construed in favor of the assured. The principle, while salutary, may be unduly and too frequently emphasized. Insurance companies are lawful entities. The law permits them to exist. The right of freedom of contract should not be denied them through a strained construction which ascribes meaning to words and phrases which evidently were not in the contemplation of the parties.

Judgment for the defendant.