Frank Del Vecchio, J.
This is an action for a judgment declaring that the defendant is liable under an insurance policy issued by it for a judgment which has been obtained against the plaintiff City of Fulton on account of the death of one John G. 0’Grady.
The previous judgment — for $35,000 — followed a jury verdict in favor of the plaintiff in an action brought by the administratrix of the deceased O’Grady, based upon alleged negligence by police officers of the City of Fulton, and was affirmed by the Appellate Division and by the Court of Appeals (4 A D 2d 743, affd. 4 N Y 2d 717). The facts which gave rise to the death action are set forth in the complaint served therein as follows:
“ 4. That on or about the 20th day of December, 1955, while plaintiff’s intestate, the said John G. O’Grady, was a patron in the Broadway Restaurant, East Broadway Street, Fulton, New York, he was suddenly and without warning caused to become violently ill and collapsed unconscious to the floor of said restaurant; that the person in charge of said restaurant at that time, realizing the condition of plaintiff’s intestate, called the Police Department of the City of Fulton and sought their aid; that shortly thereafter certain police officers, employees of the City of Fulton, arrived and took complete charge of the decedent, who was still in an unconscious condition; that upon information and belief said police officers, upon observing decedent’s condition, called to their superior at the police station and requested medical aid; that said medical aid did not arrive, and thereafter said police officers transported decedent to the police station located on First Street in the City of Fulton, New York; that upon their arrival at said police station decedent was removed from the vehicle in which he was being transported and placed on a bench in a cell at said police station; that thereafter he was left unattended in said cell and without medical aid, and on or about 6:35 a.m. of said day was discovered to be dead by a police officer making his regular rounds.
“ 5. That the City of Fulton, New York, was negligent in that its officers, agents, servants and employees carelessly and recklessly removed plaintiff’s intestate from said Broadway Restaurant and carelessly and recklessly transported said intestate to the police station and there incarcerated him in a cell; in placing said decedent in a cell and depriving him of an opportunity for medical aid and treatment; in failing to summon com *538 petent medical aid therefor; in failing to remove decedent to a hospital or other place where he could have received medical attention, but instead removing decedent to a cell in a jail where he was left unattended and in extremis; in failing to provide the proper attendants at said police station so as to care for decedent; in failing to inspect or to ascertain what decedent’s physical condition was or to make any effort to summon medical aid during the early morning of September 20, 1955 up until decedent’s death; and in otherwise being careless and negligent, all of which caused, contributed to, and accellerated decedent’s death and resulting damage to this plaintiff and others.”
After service upon it of the notice of claim and of the summons and complaint in the O’Grady action, plaintiff city transmitted each of the papers to the defendant Great American Indemnity Company which had previously issued to the city a comprehensive liability policy covering the period March 1, 1955 to March 1, 1956. The obligation of the insurer with regard to bodily injury liability is set forth in the policy as follows: “ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident. ’ ’
The policy also contains the usual provision by which the insurer agrees to defend any suit against the insured alleging injury or damage covered by the policy. Attached to the contract of insurance is a general liability schedule indorsement setting forth each hazard insured with the premium charged for the individual items. Included in this schedule is the item ‘ ‘ Policemen Code 3445 ”, with a premium of $738.52 computed on the basis of salaries paid to that department.
After examining the notice of claim and complaint in the O’Grady action the defendant took the position that the claim did not relate to personal injuries or death1 ‘ caused by accident ’ ’ and was therefore not within the coverage of the comprehensive liability policy issued by it. Plaintiff was so advised and the papers in the negligence action were returned to it. Thereafter this action was commenced for a judgment declaring defendant’s liability under the policy.
In July, 1956 the parties entered into a “Non-Waiver Agreement ” by which defendant agreed to defend the O’Grady action on behalf of the city and the plaintiff agreed that such defense would not be a waiver of defendant’s claim of nonliability under the policy, it being their intention that the determination of their respective rights under the insurance contract should be post *539 poned until a final judgment in the negligence action. The agreement was subsequently extended to include defendant’s prosecution of the appeals in the death action to the Appellate Division and the Court of Appeals.
A judgment for $35,000 in favor of Mrs. O ’Grady having been affirmed by the Court of Appeals (4 N Y 2d 717), the single question now presented is whether the damages for which the city has been held liable are the result of bodily injury and death “ caused by accident ”, within the meaning of the policy issued by defendant.
In its brief defendant states that “the claim of accidental injury or bodily injury, sickness or disease sustained by plaintiff’s intestate and caused by accident, is a theory advanced for the first time by the plaintiff in this action and not one which was relied upon in the negligence action. ’ ’ It argues that the verdict in the prior action is not binding in the present litigation and did not determine the nature of decedent’s death and that this court is free to decide for itself, upon the testimony adduced at the previous trial, whether 0’Grady’s death was caused by accident.
Insofar as defendant claims that the verdict for Mrs. O’Grady did not establish decedent’s death as “accidental”, it is of course correct, for no such issue was presented to the jury. It was their function only to determine whether the death was a proximate result of certain conduct by plaintiff’s police officers and whether that conduct fell short of the standard of care owed to the decedent. Whether 0’Grady’s death, in the circumstances described, was ‘1 caused by accident ” is a question exclusively within the province of this court in the present action.
There can be no question however that the jury in the negligence action did make a determination as to the physical cause of the intestate’s death. The case was tried and submitted on the theory that the death was caused or contributed to by the failure of plaintiff’s police officers to provide adequate medical care and attention during the period O’Grady was in their custody immediately prior to death. Dr. Ecker, a specialist in neurology testifying in answer to a hypothetical question, fixed the cause of death as swelling of the brain interfering with proper breathing and expressed an opinion that the failure of the police department to obtain medical attention contributed to decedent’s death. The jury was instructed that in arriving at a verdict they might consider whether or not any negligent act of the city contributed in any way to or accelerated Mr. 0’Grady’s death. Implicit in the verdict is a finding by the jury that the manner *540 in which the police officers treated and cared for the decedent was a proximate, producing cause of his demise. Had they found that his death was due solely to acute alcoholism or to hypertension, as suggested by defendant, they would of course have rendered a verdict of no cause for action against the city.
In determining1 whether the foregoing finding is binding upon the defendant in the present action the insurer is entitled to the benefit of the nonwaiver agreement executed by the parties prior to its participation in the negligence action. There is no reason, however, why that agreement should bestow on the defendant any greater rights with regard to the conclusiveness of the prior judgment than it would have had if after- being informed of the claim against the city it had taken no part in the litigation. It seems apparent that, in those circumstances, it would nevertheless be bound by the determination implicit in the jury’s verdict with regard to the physical cause of 0’Grady’s death. An indemnitor who has been fully and fairly advised of a claim against one whom he has agreed to indemnify and who neglects or refuses to participate in the defense is bound, in the absence of fraud or collusion, by the issues necessarily determined in the prior action to the same extent as if he had been a party to the proceedings. (Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 144 N. Y. 663; Liberty Bank, Buffalo v. Fidelity & Deposit Co. of Maryland, 241 App. Div. 597.) As was said in Morette v. Bostwick (127 App. Div. 701, 703): “ There is no doubt about the general rule that where one party is obligated to indemnify another against some liability, if the party indemnified gives notice to the indemnitor of the commencement of an action against him to enforce such liability, and gives him a reasonable opportunity to defend the same, then the indemnitor is concluded by the recovery of a judgment against the party indemnified. ’ ’
It is not necessary however for the court to base its decision as to the cause and nature of 0’Grady’s death upon the principle that the jury’s finding in the negligence action conclusively establishes the conduct of plaintiff’s police officers as a proximate, producing cause of the event for the purposes of the present litigation. Even if, as defendant urges, the court were to re-examine the issue of causation on the basis of testimony adduced at the trial of the death action, it also would conclude that the death of the decedent was a direct result of the treatment accorded him by the police following the time when he was taken into custody.
*541 Turning then to the primary issue — whether the demise of O’Grady for which plaintiff has been held liable was an occurrence ‘1 caused by accident ’ ’ within the meaning of defendant’s liability policy — there are two settled rules of construction which are helpful in the present case. First, it has been frequently said that any ambiguity in an insurance contract must be resolved against the insurer and in favor of the insured. (Mulvihill v. Commercial Cas. Ins. Co., 248 N. Y. 524; Eifert v. United States Fidelity Guar. Co., 287 N. Y. 639; Myrick v. Farm Bureau Mut. Automobile Ins. Co., 301 N. Y. 794.) That the word ‘ ‘ accident ’ ’ used in a policy of the kind issued by defendant is ambiguous (see Canadian Radium & Uranium Corp. v. Indemnity Co. of North America, 411 Ill. 325).
It is equally well established that, in construing a policy, the guide of the courts must be the reasonable expectation and purpose of ordinary business men when making such a contract, and the language employed is to be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it. (Abrams v. Great Amer. Ins. Co., 269 N. Y. 90; Burr v. Commercial Travelers Mut. Acc. Assn., 295 N. Y. 294; Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243.) This has been the standard when the words “accident”, “accidental injury” and “accidental means” have been construed. (Matter of Odell v. McGovern, 308 N. Y. 678; Matter of Connelly v. Hunt Furniture Co., 240 N. Y. 83; Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18.)
Guided by the above rules, this court is of the- opinion that the death of O’G-rady under the circumstances disclosed by the evidence at the previous trial was “ caused by accident ” within the meaning of the policy in question and that the ordinary man would so regard it. Webster’s New International Unabridged Dictionary [2d ed.] defines an accident as “ An event that takes place without one’s foresight or expectation; an undesigned, sudden, and unexpected event.” Certainly, decedent’s death was all of these. There was no proof — and the widow O ’G-rady made no claim — that plaintiff’s officers had any intention or design to bring about the unfortunate result which occurred when they took custody of O’Grady and placed him in a prison cell without the medical attention which his condition required. Insofar as they were concerned the disaster which followed their negligent conduct was entirely unanticipated and certainly far out of proportion to the misfeasance which precipitated it. The average man “would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, *542 unexpected, extraordinary, an unlooked-for mishap, and so an accident.” (Lewis v. Ocean Acc. & Guar. Corp., supra, p. 21.)
The fact that the officers no doubt intended to perform the physical acts or movements which brought about the untoward event does no't preclude the happening of an accident. 1 ‘ Injuries are accidental or the opposite for the purpose of indemnity according* to the quality of the results rather than the quality of the causes.” (Messersmith v. American Fidelity Co., 232 N. Y. 161, 165.) If the consequences are not adverted to, however willful the preceding acts, the supervening outcome is unintentional within the definition of an “ accident ”. (Messersmith v. American Fidelity Co., supra.)
The cases of Powley v. Equitable Life Assur. Soc. (257 App. Div. 324, affd. 284 N. Y. 664); Morgan v. Indemnity Ins. Co. of North America (302 N. Y. 435) and Naggy v. Provident Life & Acc. Ins. Co. (218 Iowa 694) cited by defendant, are not applicable here. Those cases were concerned with the rule — as defendant itself has stated it — that ‘ ‘ Ordinarily death solely from over-indulgence in alcoholic beverages is not considered accidental.” In the case of the decedent O’Grady, however, it does not appear that alcoholism was the sole cause of death; on the contrary, both a jury and this court have concluded that death resulted, at least in part, from the conduct of plaintiff’s officers after the decedent had been taken into their custody.
A more difficult question has been raised by the claim of defendant that there has been no “ accident ” because there was no single occurrence or event identifiable in time or space associated with 0’Grady’s death. Certainly there is authority for the proposition that injury or death which occurs after a long continued exposure to some harmful substance or condition progressively bringing about a deterioration of health is not ‘ ‘ accidental ’ ’. (Matter of Jeffreyes v. Sager Co., 233 N. Y. 535; Matter of Lerner v. Rump Bros., 241 N. Y. 153; Jackson v. Employers’ Liability Assur. Corp., 259 N. Y. 559.) However, even this position has been recently rejected in other jurisdictions where such injuries have been held to be “ accidents ” within the scope of compensation laws {General Elec. Co. v. Industrial Comm., 411 111. 401) and the coverage of liability policies similar to that issued by defendant. (Beryllium Corp. v. American Mut. Liability Ins. Co., 223 F. 2d 71.)
In the view of this court, there is a substantial difference between the “ exposure ” and Jackson cases and the facts which give rise to the present action. Unlike the exposure cases, *543 0’Grady’s death did not come about through his voluntary subjection of himself to a passive, deleterious condition over a long period of time, but was caused by the affirmative conduct of third persons in taking him into their exclusive custody and 1 hereafter failing to provide needed care and attention, all of which precipitated his death within a matter of hours. Nor is this similar to the Jackson case were the trial court held: “ This infant died from disease or diseases, which terminated fatally after a continuous and progressive development of a month’s duration, possibly accelerated by other causes not determinable, and not as the result of any illness occasioned by a definite, specific occurrence of a sudden and catastrophic nature.” (Jackson v. Employers’ Liability Assur. Corp., 139 Misc. 686, 690.) In that case the court also pointed out that the failure of the landlord to provide heat — which was claimed to have caused an “ accidental” death of an infant tenant — had continued in varying degrees for nearly two months before death, and it characterized as “merely conjectural ” any conclusion that death resulted from such lack of heat.
In determining whether there was an accident, the “ transaction as a whole ” must be examined. (Messersmith v. American Fidelity Co., 232 N. Y. 161,166, supra.) Upon such an examination, this court has eoaicluded that the acts of plaintiff’s police officers coupled with the resulting death of O’Grady are sufficiently identifiable in time and space as to constitute an accident. At the time they took the decedent into their control the officers entered upon a course of conduct which, within a few hours, directly resulted in his death. The fact that an interval of time elapsed between the moment when the negligent conduct was begun and the final disaster occurred does not make the occurrence any less accidental. (Lagoioitz v. United States Fidelity & Guar. Co., 281 N. Y. 876.) “ The whole group of events, beginning with the cut (here, the taking into custody) and ending with death, was an accident, not in one of its phases, but in all of them.” (Matter of Connelly v. Hunt Furniture Co., 240 N. Y. 83, 86, supra.)
Plaintiff is therefore entitled to a judgment declaring that the death of John 0’Grady was an occurrence “ caused by accident ” and is within' the coverage of the comprehensive public liability policy issued by defendant.
Prepare judgment accordingly.