Walter R. Hart, J.
This is an appeal by defendant from an order made at Special Term, Part I, of the Municipal Court, on October 22,1959, granting plaintiffs ’ motion for judgment on the pleadings pursuant to rule 112 of the Rules of Civil Practice, and from a judgment in the sum of $2,903 entered in the Clerk’s office on the 26th day of May, 1960.
Plaintiffs, while engaged in the construction of a golf course and its maintenance thereafter, were the insured under a “ Manufacturers and Contractors Liability Policy” issued by the defendant. They brought this action to recover damages sustained by reason of the defendant’s alleged breach of contract in failing to defend an action brought against them for injunctive relief and damages allegedly resulting from the manner of construction of the golf course and its continued maintenance by them.
*480 Under Coverage “ B ” of the insuring agreement pertaining to property damage liability, the insurer agreed “ to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property * * * caused by accident and arising out of the hazards hereinafter defined. ’ ’ (Emphasis supplied.)
Under ‘‘ Description of Hazard”, the following appears: “ Subd. 4—1 Products.’ Construction Operations — Owners — (Not Railroads) Excluding operations on board ship.”
The court below erred in granting the motion since there was a denial of several material allegations of the complaint. Moreover, a plaintiff in moving for judgment under rule 112 of the Rules of Civil Practice subjects the sufficiency of his own pleadings to the scrutiny of the court even though, as here, no counter-motion is made by the opposing party. The court, when such a motion is made, is required to examine all of the pleadings and not merely those under attack and must grant judgment to defendant even though he himself did not move for such relief, where it is found that the complaint is insufficient. On such a motion the court, in examining the complaint, may not use any portion of the answer to supply a deficiency in the complaint. (Powell v. Powell, 202 Misc. 981; 5 Carmody-Wait, New York Practice, § 78, p. 111.)
An examination of the complaint herein discloses its patent insufficiency. Nowhere therein do the plaintiffs set forth any material facts pertaining to the original action, nor are there any facts alleged which would indicate that the complaint in the original action based its right to recover upon facts which would show an accidental injury to their property. It is only by reading the defendant’s affirmative defense and the complaint in the original action which is attached to the answer in this case that we are apprised of the nature and the basis of the former action. Accordingly, the complaint herein should be dismissed.
Despite this disposition, the court, for the guidance of the parties herein in framing their pleadings, will express its views with respect to the pleading before it.
The complaint which is predicated upon a refusal to defend an action, which it is claimed should be defended by an insurer, to be proper, should set forth all of the material allegations of the complaint in the action instituted against the insured. The complaint, of course, may incorporate by reference the allegations of the complaint in the prior action.
With respect to the sufficiency of the affirmative defense herein, it is to be observed th»t the action which had been insti *481 tilted against the plaintiffs, and as established by the defendant’s answer and affirmative defense, was brought by abutting property owners for an injunction restraining and enjoining the plaintiffs herein, defendants in that action, from continuing to maintain the alleged nuisance described in the complaint as well as for damages to property sustained by those plaintiffs in excess of $3,000. The complaint in that action, in substance, charged the plaintiffs herein with having changed and altered the level and character of their land so as to create and artificially raise hills and mounds near the boundary line of the two properties involved with the result that when it rained, water would be funneled into a channel and flow with great force onto the adjoining property; that the channeled water carried with it silt, gravel and stones which were deposited on the adjacent property, flooding the cellar of the building of the plaintiffs in that action and damaging property therein. In addition, it ivas alleged, the force of the debris cast upon the abutting property caused the washing away of the topsoil, grass and landscaping and that this never occurred prior to the alteration of plaintiffs ’ property. The plaintiffs herein (defendants in that action) were then charged with having created a nuisance and with the willful refusal to abate and correct it.
When the action was instituted, the plaintiffs requested the defendant to defend them, which it refused to do upon the ground that they were only required to defend in those instances where liability might be imposed upon the insured for damages because of injury or destruction to property caused by accident; that the allegations in the complaint in the action instituted against plaintiffs did not indicate 'that an accident occurred. Plaintiffs were, therefore, compelled to retain counsel to defend the action which was then tried in the Supreme Court, Nassau County, resulting in a decision dismissing that complaint.
Plaintiffs thereafter instituted this action to recover their expenses in defending the lawsuit. The affirmative defense in this action alleges, in substance, that there was no claim for damages resulting from “ accident ” involved in the original lawsuit and that defendant was under no obligation to defend same. In support of such defense, the defendant quoted and repeated the essential allegations of the original complaint as hereinabove referred to and annexed a copy of said complaint to its answer. An evaluation of the sufficiency of the affirmative defense and the position taken by defendant requires a construction of the specific clauses in dispute in the declaration and terms of the policy, particularly the word “ accident.” This word is not completely free from ambiguity. In addition to the *482 plethora of authority attempting to define it, two recent cases have defined it anew. As was stated in City of Fulton v. Great Amer. Ind. Co. (11 Misc 2d 536, 541, affd. 7 A D 2d 832):
“ [I] t has been frequently said that any ambiguity in an insurance contract must be resolved against the insurer and in favor of the insured. (Mulvihill v. Commercial Cas. Ins. Co., 248 N. Y. 524; Eifert v. United States Fidelity & Guar. Co., 287 N. Y. 639; Myrick v. Farm Bureau Mut. Automobile Ins. Co., 301 N. Y. 794.) That the word 1 accident ’ used in a policy of the kind issued by defendant is ambiguous (see Canadian Radium & Uranium Corp. v. Indemnity Co. of North America, 411 Ill. 325).
“It is equally well established that, in construing a policy, the guide of the courts must be the reasonable expectation and purpose of ordinary business men when making such a contract, and the language employed is to be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it. (Abrams v. Great Amer. Ins. Co., 269 N. Y. 90; Burr v. Commercial Travelers Mut. Acc. Assn., 295 N. Y. 294; Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243.) This has been the standard when the words ‘ accident ’, ‘ accidental injury ’ and 1 accidental means ’ have been construed. (Matter of Odell v. McGovern, 308 N. Y. 678; Matter of Connelly v. Hunt Furniture Co., 240 N. Y. 83; Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18.) ”
In Johnson Corp. v. Indemnity Ins. Co. of North America (7 N Y 2d 222, 228) an accident is defined as follows: “ ‘ an event of an unfortunate character that takes place without one’s foresight or expectation ■* * *.’ (Definition taken from Matter of Croshier v. Levitt, 5 N Y 2d 259, 269 [1959]; emphasis added.) ”
Defendant’s argument, as set forth in its brief, is that an accident did not occur in the original instance ‘ ‘ but was the result of actual design or falls under the maxim that every man must be held to intend the natural and probable consequences of his acts.” Defendant further contends that the “ original change of land which was done by the Pine Hollow Country Club was that which they intended and calculated and therefore it was not as a result of chance and hence not an accident.” (Emphasis supplied.)
It is true that the act of changing the contour of the land was intentional, but were its consequences intended? Only when the result as distinguished from the act is intended, may it be said that the consequences of an act were not accidental. This concept was brought into clear focus by Judge Cabdozo in Messer *483 smith v. American Fid. Co. (232 N. Y. 161, 165-166) wherein he said:
“ The defendant does not greatly dispute that there may be indemnity against the consequences of negligence. It argues, however, that in this case the plaintiff’s liability was the product, not of negligence, but of willfulness. Undoubtedly, the policy is to be confined to liability for injuries that may be described as accidental. Even if its terms did not so limit it, the fundamental principle that no one shall be permitted to take advantage of his own wrong would import the limitation. But the extension of the policy to this case is no departure from its restriction to injuries that are the product of accident or negligence. The plaintiff in intrusting his car to a youth under eighteen did not desire or intend that there should be an injury to travelers. The act of so intrusting it was willful, but not the ensuing conduct of the custodian, through which injury resulted. Indeed, the violation of the statute would have been the same though the driver’s age had been unknown. What was willful was not actionable except as it became so in the sequel through what was unintended or fortuitous.
“ Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes. The field of exclusion would be indefinitely expanded if the defendant’s argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is willful when viewed in isolation and irrespective of its consequences. An act ex vi termini imports the exercise of volition (Holland, Jurisprudence [8th ed.], pp. 93, 94). Even so, if the untoward consequences are not adverted to — at all events, if the failure to advert to them is not reckless and wanton (cf. Penal Law, sec. 1044, subd. 2)—liability for the consequences may be a liability for negligence (Holland, supra, pp. 97, 98; 2 Austin, Lectures, p. 103; Salmond, Jurisprudence, pp. 351, 363; Martin v. Herzog, 228 N. Y. 164,168. Cf. 1 Street, Foundations of Legal Liability, 80; Holmes, Common Law, pp. 103, 105.) A driver turns for a moment to the wrong side of the road, in the belief that the path is clear, and deviation safe. The act of deviation is willful, but not the collision supervening. The occupant of a dwelling leaves a flowerpot upon the window-sill, and the pot, dislodged by wind, falls upon a passing wayfarer (N. Y. City Ordinances, § 250). The position of the flower pot is intended, but not the ensuing impact. The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them dis *484 tributively. It is determined by the quality and purpose of the transaction as a whole.”
To the average person an accident — the results of an act — is something which was not done “ on purpose.” The word “ accidental ” is the antonym of “ purposely.” It is no answer to say that an insured forfeits his right to coverage for his failure to foresee the consequences of an act because that is simply another way of saying that the insured was negligent; that he, therefore, becomes subject to “ a liability imposed by law,” the very thing the policy expressly insures him against.
In the instant case it cannot be argued that the insured intended to inflict the damage on the property of the plaintiff as set forth in the complaint in the original action. No such claim was made in that complaint. Whether the act of the insured be negligent, wanton, willful or even violative of a criminal statute, if the result of such act was not intended then it is accidental. This conclusion is buttressed first, by the realization that in almost every accident in which a motor vehicle is involved there has been a violation of the Vehicle and Traffic Law or the Traffic Regulations and, second, by an analysis of authorities.
In City of Fulton v. Great Amer. Ind. Co. (supra) the defendant insurance company defended a death action brought on behalf of the next of kin of one O’Grady against the city pursuant to an agreement whereby the defense of the action was not to be deemed a waiver of defendant’s claim of nonliability under a policy indemnifying the city from claims for damage ‘ ‘ caused by accident.” After affirmance of a judgment in the Court of Appeals in favor of the administratrix of O’Grady, the city brought an action for judgment declaring the insurance company liable under the policy. The complaint in the action brought by the city set forth the complaint in the action against it. The facts alleged therein set forth that while O’Grady was a patron at a bar he became ill and fell unconscious to the floor. The person in charge of the bar called the police who, in turn, sought medical aid. When the medical aid failed to arrive police officers transferred O’Grady to the police station placing him on a bench in a cell and thereafter failed to obtain medical aid. As a consequence O’Grady died. The court in the action against the insurance company found that the death was “ caused by accident” within the policy, observing (11 Misc 2d 541-542): “ There was no proof — and the widow O’Grady made no claim — that plaintiff’s officers had any intention or design to bring about the unfortunate result which occurred when they took custody of O’Grady and placed him in a prison cell without the *485 medical attention which his condition required. ’ ’ The court further noted: ‘ ‘ The fact that the officers no doubt intended to perform the physical acts or movements which brought about the untoward event does not preclude the happening of an accident. 1 Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes.’ (Messersmith v. American Fidelity Co., 232 N. Y. 161, 165.) If the consequences are not adverted to, however willful the preceding acts, the supervening outcome is unintentional within the definition of an ‘ accident ’. (Messersmith v. American Fidelity Co., supra.) ”
In Johnson Corp. v. Indemnity Ins. Co. (6 A D 2d 97, affd. 7 N Y 2d 222, supra), a contractor’s liability policy insured the plaintiff against claims for damages because of injury to or destruction of property “ caused by accident.” During a heavy rainfall temporary protecting walls erected by the contractor collapsed under the water pressure and water poured into several buildings. The Court of Appeals noted (p. 227) that “ there is no question but that the damage was caused by ‘ accident ’. ’ ’ The court went on to say it must construe the word “ accident,” as used in an insurance policy, “ as would the ordinary man on the street or ordinary person when he purchases and pays for insurance ” (p. 227). The court then reaffirmed its definition of “ accident ” as stated in Matter of Croshier v. Levitt (5 N Y 2d 259, 269) as “ ‘ an event of an unfortunate character that takes place without one’s foresight or expectation ***.»**« That is, an unexpected unfortunate occurrence ” (p. 228).
In Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co. of N. Y. (280 App. Div. 665, motion for leave to appeal denied 305 N. Y. 932) damage resulted from water leaking through a roof which had been left exposed to the elements by plaintiff a roofing concern, which was unable to finish a job by reason of inclement weather. The defendant insurer there contended that the conduct of the plaintiff in leaving the roof exposed to the elements was not an accident and argued that the damage could have been foreseen and was the result of calculated conduct rather than chance. Said the Appellate Division (p. 667): “ While undoubtedly the intentional infliction of injury cannot be regarded as an accident and conduct may be so heedless as to be equated to the willful, we cannot take seriously the suggestion that plaintiff’s conduct here was more than negligent. Defendant does not go so far as to suggest that negligence on the part of plaintiff absolves the defendant of liability or that the term ‘ accident ’ should be so narrowly construed as to rule out an occurrence *486 caused by negligence. Indeed, negligence would be the predicate of any likely liability insured against and defendant concedes that in construing a contract of this kind words should not be given a technical meaning but should be taken as they would be understood by an average man. We have no doubt that the average man would consider the occurrence in question as an ‘ accident ’ in the common conception of that word. ’ ’
In Rothman v. Metropolitan Cas. Ins. Co. (134 Ohio St. 241) an action was brought to recover on a liability policy issued by defendant. The action was brought pursuant to statute after plaintiff, a passenger in a motor vehicle, had recovered a judgment for personal injuries against her host. Pursuant to the requirement of the Ohio guest statute, plaintiff in the original action alleged that she sustained her injuries as a result of the wanton misconduct of the driver of the motor vehicle. The contention of the insurer that the injuries were not “ accidentally suffered ” because of the willful misconduct of the assured was rejected, the court pointing out that “ Wantonness does not include intent to injure. * * * ‘ wanton misconduct ’ does not embrace intent to injure.” (p. 245). The court further stated (pp. 246-247):
‘ ‘ In our opinion, only those acts which are not motivated by an intent and purpose to injure are to be regarded as covered by the terms of this policy. As previously pointed out, practically every instance in which liability arises under such a policy involves a violation of some traffic law or regulation. There is no limitation in the terms of the policy in the respect under consideration. It is as broad in its scope of liability as is the term ‘ accidental. ’
‘1 Let us repeat: The word ‘ negligence ’ is not used anywhere in the insurance contract. Hence, there is no such limitation implied in the coverage of the policy, and if the injury was not intentionally caused, then it was accidentally suffered. In this case there was no finding, nor is there any claim, of intentional injury. As well stated in the case of Sontag v. Galer, 279 Mass., 309,181 N. E., 182, ‘ It is the state of the ‘ ‘ will of the person by whose agency it [the injury] was caused ” rather than that of the injured person which determines whether an injury was accidental. ’ In that case, as in the Headers case, supra, [Commonwealth Cas. Co. v. Headers, 118 Ohio St. 429] it was held that the policy does not protect the insured from his own intentional and malicious acts. It is there pointed out that ‘ accident, ’ as the term is ordinarily used, is a more comprehensive term than ‘negligence,’ and in its common signification means an unexpected happening without intention or design.
*487 “ The language of this policy is so clear and unambiguous that it calls for no interpretation by the court. If there were any ambiguity in the terms of the company’s insurance policy, the principles of construction and interpretation applicable are well established. The judgment resulted from a claim for injuries accidentally suffered by reason of the use of the automobile covered by the policy, and the insurance is against loss in consequence of an accident without any limitation as to the manner of its occurrence. If there were to be any exceptions or limitations in such respect, the policy should have contained apt language to effect such limitations.”
Even where the injuries are the result of an assault by employees of an insured, they have been deemed as to the insured to be accidental within the meaning of the policy. (Floralbell Amusement Corp. v. Standard Sur. & Cas. Co., 256 App. Div. 221.) In Morgan, v. Greater New York Taxpayers Mut. Ins. Co. (305 N. Y. 243) it was held that a nonassaulting partner was entitled to indemnification under an accident liability policy for an assault committed by his partner in the course of the partnership business.
Reverting then to the instant case, it is observed again that the complaint in the original action did not allege any facts from which it could be inferred that plaintiffs intended, by changing the contour of their land, to flood the property of their neighbors. Accordingly, it must be concluded that the alleged results flowed from an accident.
Defendant, to sustain a contrary conclusion, quotes from the opinion of Mr. Justice May in Jackson v. Employers’ Liab. Assur. Corp. (139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559). There the court, at Special Term, stated at page 689: ‘ ‘ The word ‘ accident, ’ in the point of view of the average man, conveys a sudden and instant happening, an event of the moment rather than a condition which continues to develop, progress and change through a period of time. According to the mental conception of the average man, it means a happening, not only unexpected and unusual, but one referable to a definite and fixed period of time. (Jeffreyes v. Sager Co., 198 App. Div. 446, 447; affd., 233 N. Y. 535.) ”
Defendant contends that, since the complaint in the original action did not refer to one specific event, no accident was alleged. However, as observed by the court in City of Fulton v. Great Amer. Ind. Co. (11 Misc 2d 536, 542, supra): “ even this position has been recently rejected in other jurisdictions where such injuries have been held to be ‘ accidents ’ within the scope of compensation laws (General Elec. Co. v. Industrial Comm., 411 *488 Ill. 401) and the coverage of liability policies similar to that issued by defendant. (Beryllium Corp. v. American Mut. Liability Ins. Co., 223 F. 2d 71.) ” As pointed out by the court at Trial Term in the City of Fulton case (supra, p. 543): “ In determining whether there was an accident, the 1 transaction as a whole ’ must be examined. (Messersmith v. American Fidelity Co., 232 N. Y. 161, 166, supra.) * * * The fact that an interval of time elapsed between the moment when the negligent conduct was begun and the final disaster occurred does not make the occurrence any less accidental. (Lagowitz v. United States Fidelity & Guar. Co., 281 N. Y. 876.) ‘ The whole group of events, beginning with the cut (here, the taking into custody) and ending with death, was an accident, not in one of its phases, but in all of them. ’ (Matter of Connelly v. Hunt Furniture Co., 240 N. Y. 83, 86, supra.) ”
Similarly here the whole group of events beginning with the creation of the mounds and resulting in the instances in which the land was flooded, was an accident, in not one of these phases, but in all of them.
It is also argued by defendant that in view of the fact that the original action was brought primarily for an injunction against the continuance of a nuisance and not for damages there was no duty on the part of the defendant to defend. This argument disregards the fact that the complaint demanded substantial monetary damages in addition to injunctive relief.
In Doyle v. Allstate Ins. Co. (1 N Y 2d 439) the carrier undertook “ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * and as damages because of injury or destruction of property, including the loss of use thereof.” The policy also provided, as in the instant case, that the insurer would ‘ ‘ defend any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent ”. An action was brought against the insured to enjoin him from operating a kennel for dogs. The complaint alleged that the continual barking of the dogs destroyed the peaceful and quiet enjoyment of the neighbors’ property and further alleged: “ 5. That by reason of said nuisance maintained and operated by the defendant as hereinbefore set forth, the value of plaintiffs’ property has been impaired and the health of plaintiffs has been injured. ’ ’ The prayer for relief was for an injunction and there was no demand for damages. The insurer refused to defend and the insured instituted suit to recover the amount expended for legal fees and expenses in defense of the original action. Cross motions were made for summary judg *489 ment; Special,Term denied the insured’s motion and granted the insurer’s motion upon the ground that the insurer undertook to defend only actions wherein money damages were sought against the insured and that damages could not have been awarded in the original action. The Appellate Division (1 A D 2d 738) unanimously affirmed. In reversing, the Court of Appeals said (pp. 442-444).:
“It is true, of course, that when the plaintiff pleads an equitable cause of action only and fails to prove the facts relied on to sustain the equity jurisdiction, equity will not retain the cause for the purpose of awarding him damages (Merry Realty Co. v. Shamokin & Hollis Real Estate Co., 230 N. Y. 316, 324; Jackson v. Strong, 222 N. Y. 149, 153-154; Bradley v. Aldrich, 40 N. Y. 504, 511). ‘ The award of mere compensatory damages, which are almost always unliquidated, is a remedy peculiarly belonging to the province of the law courts, requiring the aid of a jury in their assessment, and inappropriate to the judicial position and functions of a chancellor ’ (1 Pomeroy on Equity Jurisprudence [5th ed.], § 237d). If, however, the plaintiff succeeds in proving that he is entitled to equitable relief, equity may grant damages in addition to or as an incident of some other special equitable relief or, where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy. ‘ It is a familiar principle that a court of equity, having obtained jurisdiction of the parties and the subject-matter of the action, will adapt its relief to the exigencies of the case. It may order a sum of money to be paid to the plaintiff and give him a personal judgment therefor when that form of relief becomes necessary in order to prevent a failure of justice and when it is for any reason impracticable to grant the specific relief demanded ’ (Valentine v. Richardt, 126 N. Y. 277; Murtha v. Curley, 90 N. Y. 372; Van Rensselaer v. Van Rensselaer, 113 N. Y. 207, 214; Bell v. Merrifield, 109 N. Y. 202, 207).
“ So, it is clear that a money judgment — damages — could have been awarded in the Markle action had the Markles established their right to equitable relief. Certainly plaintiff would have been legally obligated to pay that money judgment. * * * The policy does not draw any distinction between damages awarded by a court of law and those awarded by a court of equity. The insured was justified in expecting that if suit was instituted against him wherein he might be legally obligated to pay a sum of money as damages * * * the insurer would defend. It is of no moment that such a judgment was not actually obtained against plaintiff. The defendant was *490 obligated to defend against the possibility thereof ‘ even if such suit is groundless, false or fraudulent ’. It follows, therefore, that defendant’s refusal to undertake the defense of the Markle action was a breach of its covenant with the plaintiff, that defendant is not entitled to summary judgment herein and that plaintiff is entitled to judgment against defendant.”
While it is true that the policy in the Doyle case was a comprehensive liability policy, the rationale appearing from the above excerpts with respect to the duty of an insurer are equally applicable to the case under consideration.
Accordingly, it is the conclusion of the court that the affirmative defense, as concluded by the court below, is insufficient as a matter of law.
The order and judgment should be reversed, without costs, the motion for judgment on the pleadings denied and the complaint dismissed, with leave to plead over, if so advised, within 20 days after the service of a copy of the order hereon with notice of entry.
Brows' and Dalt, JJ., concur.
Order and judgment reversed, etc.