James J. Crisona, J.
On November 2, 1957, three men lost their lives and five others suffered personal injuries upon inhaling poisonous gases which had accumulated in a sewer in which they were working. As a result thereof several actions have been brought to recover damages against varying numbers of defendants. In three of these actions plaintiff Farnow, Inc., is named as a defendant.
Farnow, Inc., has brought this action for judgment declaring that defendant ¿Etna Insurance Company of Hartford, Connecticut, is obligated to defend it in the three afore-mentioned actions under the terms of ¿Etna’s policy No. CAQ--4011834 which was in effect from April 18, 1957 to April 18, 1958, and for damages sustained as a result of ¿Etna’s refusal to defend.
Plaintiff now moves to strike the affirmative defense contained in paragraphs Eighth to Thirteenth of the answer on the ground of legal insufficiency and for summary judgment. Both plaintiff and defendant concede that no issues of fact are present but solely a question of law that can be determined upon this motion.
The afore-mentioned policy issued to Farnow, Inc., is in the nature of a comprehensive liability policy pursuant to which defendant agreed under Article I, Coverage B thereof, as follows: “ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.” (Emphasis supplied.) The policy further provided under Article II that defendant shall: “ (a) defend any suit *481 against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient ”.
The affirmative defense under attack contains allegations to the effect that defendant is not obligated to defend plaintiff in the three actions because the injuries and deaths complained of therein are not alleged to have been caused by an accident for which coverage is afforded under the terms of the policy.
The complaints in all three actions allege the following- chain of circumstances that resulted in the deaths and injuries. In 1954 the City of New York, hereinafter called the City, engaged a contractor to build a new interceptor sewer in Queens County. The contractor and one of its subcontractors thereafter constructed a brick bulkhead in the interceptor sewer which was fitted with a valve for draining purposes. In two of the three actions it is alleged that this bulkhead was constructed ‘ ‘ In violation and contrary to plans and specifications and prevailing-proper construction practices and techniques ” in that the bulkhead was 16 inches instead of 12 inches thick. In all three actions it is alleged that although an 8-inch valve and spoolpieee were specified only a 4-inch valve and spoolpieee was supplied and installed. Thereafter cement mortar, grit, grime, sludge and other materials from the construction work became imbedded in the spoolpieee of the valve causing its diameter to become smaller, thus creating- an obstruction. During the construction of the interceptor sewer a break occurred in another part of the sewer system causing sewerage to flow into and flood the interceptor sewer. This sewerage allegedly accumulated between the bulkhead and a nearby manhole. It is also alleged that for some time prior to December, 1957 industrial wastes were being discharged into the public streets and City sewers and that these wastes flowed into the interceptor sewer south of the bulkhead. These wastes allegedly gave off poisonous gases which also accumulated in the interceptor sewer. On September 30, 1957 the City, in preparing- to remove the bulkhead, sent a contractor’s employee- into the sewer to open the valve so that the sewerage from the south side of the bulkhead would flow through the valve to the north side and eventually into a sewerage disposal plant. The sewerage, however, was not draining properly because of the alleged improper construction of the bulkhead and the undersized valve which, as already noted, became smaller because of the accumulated and imbedded construction material. The City then decided to send some of its employees to close the valve. *482 These City employees wore gas masks which did not function and, as previously indicated, three of these employees were killed and five others suffered personal injuries.
In all three actions numerous defendants are named, including the general contractor and subcontractor who constructed the bulkhead. Certain other defendants, including the plaintiff herein, are alleged to have been negligent in discharging industrial wastes in such manner that they eventually flowed into City sewers and found their way into the interceptor sewer, giving off poisonous gases which accumulated therein.
It is undisputed that plaintiff complied with all the terms and conditions of the liability insurance policy. The sole issue before the court is whether the deaths and injuries as alleged in the three actions were caused by accident within the applicable provision of the policy.
Defendant’s opposition to the motion is threefold. Initially it argues that an accident has not occurred within the meaning of the policy since plaintiff Farnow, Inc., is charged with having deliberately discharged waste matter into the City’s sewers. The court finds very little merit to this argument. The complaints in the three actions contain allegations of negligent conduct with respect to the discharge of wastes by plaintiff. In any event 11 Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes.” (Messersmith v. American Fid. Co., 232 N. Y. 161, 165.) Assuming, but not holding, that Farnow, Inc., deliberately discharged wastes into the City sewers, it could hardly be suggested that the complaints in the three actions charge Farnow, Inc., with having intended the results, to wit the deaths and personal injuries. (Wolk v. Royal Ind. Co., 27 Misc 2d 478, 482.)
Defendant then argues that an accident has not occurred because the event did not come about as the result of a ‘ ‘ sudden, violent, catastrophic and specific act, but was the result of the unlawful discharge of chemicals and waste into the city sewers over a long period of time ”. Defendant relies heavily upon Jackson v. Employers’ Liab. Assur. Corp. (139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559). In that case the court (139 Misc. 690) held that the death of the infant was not an accident because of the absence “ of a cause relatively definite in point of time ’ ’. The court, however, was concerned with injury or death which occurs after a long, continued exposure to some harmful condition. As was noted in City of Fulton v. Great Amer. Ind. Co. (11 Misc 2d 536, 542, affd. 7 A D 2d 832), the position taken by the court in the Jackson case (supra) “ has *483 been recently rejected in other jurisdictions where such injuries have been held to be ‘ accidents ’ within the scope of compensation laws ”. The fact that an interval of time elapsed between the moment when the negligent conduct was begun and the final disaster occurred does not make the occurrence any less accidental. (Lagowitz v. United States Fid. & Guar. Co., 281 N. Y. 876.) In determining whether there was an accident, the ‘ ‘ transaction as a whole ” must be examined. (Messersmith v. American Fid. Co., 232 N. Y. 161,166, supra.) Under the circumstances here presented the complete chain of circumstances, beginning with the alleged defective construction of the bulkhead resulting in an accumulation of waste material which was discharged into the City sewers, ‘ ‘ was an accident, in not one of these phases, but in all of them ”. (Wolk v. Royal Ind. Co., 27 Misc 2d 478, 488, supra.)
Finally defendant argues 1‘ All of the victims wore gas masks when they entered the sewer as a precaution against asphyxiation. It required no keen imagination to foresee the dangers to to be encountered. The exposure to the danger of gas poisoning was assumed voluntarily. The consequences were predictable and foreseeable. Under such circumstances there was no accident; there was merely an occurrence.” The court is of the opinion that this contention is also untenable. “ The field of exclusion would be indefinitely expanded if the defendant’s argument were pursued to the limit of its logic.” (Messersmith v. American Fid. Co., 232 N. Y. 161, 165, supra.) “ The word ‘ negligence ’ is not used anywhere in the insurance contract. Hence, there is no such limitation implied in the coverage of the policy, and if the injury was not intentionally caused, then it was accidentally suffered. * * * ’ It is the state of the * will of the person by whose agency it [the injury] was caused ’ rather than that of the injured person which determines whether an injury was accidental.” (Wolk v. Royal Ind. Co., 27 Misc 2d 478, 486, supra.)
Accordingly, plaintiff’s motion for summary judgment is granted declaring defendant, /Etna Insurance Company of Hartford, Connecticut, obligated under its policy No. CAG-4011834 to defend plaintiff in the three above-described actions and further obligated to pay, within the limits of said policy, all sums which plaintiff may become obligated to pay by reason of any recovery or judgment against it in said three actions. As to damages, an assessment is necessary. (Bules Civ. Prac., rule 113, subd. 3.)
In view of this disposition, the court has not passed upon that branch of the motion addressed to the affirmative defense as the same is now academic.