This is an action brought against the defendant insurance company seeking reimbursement for moneys which the plaintiff claimed *Page 223 
to have paid out in settlement of a prior suit brought against it for damages (Shepard v. PalaceLaundry Co., Superior Court, New Haven County, No. 89591) and seeking reimbursement for the expense of defending against that action. The plaintiff claims that it had taken out a manufacturers' and contractors' schedule liability policy of insurance with the defendant company covering the plaintiff's laundry operations at 49-51 Elm Street in West Haven. The complaint herein alleges that although the company was duly notified of the action brought, it refused to defend the suit, and that, as a result, the plaintiff was required to expend moneys for retaining an attorney to defend the action. It was subsequently settled for $500, paid to the plaintiff Norma Shepard.
The focal point of controversy herein is whether the insurance policy issued to the plaintiff herein required the defendant to defend the earlier case brought against the present plaintiff as defendant. The policy issued covered only "Bodily Injury Liability" and applied solely to "Premises-Operations-Laundering and Dry Cleaning: Laundries-not automobile." The bodily injury liability coverage required the defendant "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined."
The complaint in the earlier case alleged: "5. During the summer of 1958, the defendant either installed new equipment or there was an improper repair of equipment upon the premises, or the equipment or some of it, became in need of repair. 6. As a result of one or more of the aforesaid factors the premises of the plaintiffs have become subject to *Page 224 
severe vibrations emanating from and having their source in and upon the defendant's premises." The complaint thereafter, in paragraphs 9 and 10, alleged that the plaintiff Norma Shepard may "go into a state of nervous breakdown" if the annoyances due to the claimed vibrations continued. Paragraph 15 further alleged: "As a further result of said vibration annoyance the plaintiff, Norma Shepard, has had to seek medical attention, and in the future may incur further medical expense." The complaint, in addition, made the claim that the continuing conduct of the defendant, causing or resulting in the emission of vibratory action to the plaintiffs' premises, "constitutes a private nuisance in that the plaintiffs are, have been and will continue to be injured in relation to their rights as created and existing by reason of their ownership of an interest in land."
Defendant's claim is that the various allegations of the complaint in the Shepard case set forth an intentional conduct and action on the part of the defendant Palace Laundry constituting a private nuisance and that these allegations did not spell out a claim of bodily injury "caused by accident." It must be clarified that the issue involved herein has no reference to any claim of property damage. The defendant insurance company further argues that whatever bodily injury either of the plaintiffs in the Shepard case sustained did not occur on the present plaintiff's premises. It submits that the only hazard insured against was "Division 1-Premises-Operations." This is defined to be "the ownership, maintenance or use of premises, and all operations."
The defendant further claims that the Shepards' complaint alleged that Norma Shepard was injured on her own property because of the continuing conduct of the defendant laundry "so as to cause or *Page 225 
result in the emission of vibratory action to the plaintiffs' premises." The defendant points out that nowhere in the Shepards' complaint is there any allegation specifically referring to "negligence," or of any failure to warn, inspect, repair, modify or abate the condition alleged; that the complaint alleged only a continuing wilful course of intentional conduct; and that nowhere does the complaint allege the occurrence of an "accident."
Both parties herein, in the briefs filed, seek support for their respective claims in the recent case of Missionaries of the Company of Mary, Inc. v.Aetna Casualty Surety Co., 155 Conn. 104. The terms of the policy in the Missionaries case is analogous in its reference to payment on behalf of the insured of damages "because of bodily injury, . . . sustained by any person, caused by accident . . . ." As this case further brings out (p. 110), this rule is practically universally recognized: "The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured." The parties accept fully the controlling principle that whether the defendant insurance company had a duty to defend the present plaintiff in the previous action depends on whether the complaint in that prior action stated facts which appeared to bring Shepards' claimed injury within the policy coverage.
Adopting the Missionaries case, supra, as the guideline, the defendant company argues that the allegations of the complaint in the previous action do not warrant the conclusion that an allegation of bodily injury caused by accident is made. But it must be pointed out that paragraph 5 contains an allegation, in the alternative, that there was "an improper repair of equipment upon the premises." Paragraph 6 alleges that as a result of one or more *Page 226 
of the aforesaid factors (including improper repair of equipment) the premises of the plaintiffs Shepard became subject to severe vibrations. Paragraph 15 of the complaint alleges that as a result of said vibrations and annoyances, the plaintiff Norma Shepard has had to seek medical attention and in the future may incur further medical expense. And paragraph 9 alleges that if the annoyances continued, the plaintiff Norma Shepard would be caused to go into a state of nervous breakdown. Paragraph 11 alleges that the comfort and right of enjoyment of health of the plaintiffs are injuriously affected by the vibrations in question.
Admittedly various other allegations of the plaintiffs' complaint in the prior action do set forth allegations as to a private nuisance. But a fair reading thereof leads to the conclusion that the claim of damages sustained because of the private nuisance alleged relates, as set out in paragraph 14 of the complaint, to the plaintiffs' "rights as created and existing by reason of their ownershipof an interest in land." (Italics supplied.) The claims of damages set out in the complaint, in addition to claims for an injunction, also make a claim for damages in the sum of $5000.
As is emphasized in the Missionaries case, supra, 113, the defendant, when requested by the plaintiff herein to defend it in the action brought by the Shepards, "was called upon to exercise its judgment as to what was required of it under its contractual obligation to the plaintiff. It could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose." The Missionaries decision therefore makes clear that if, under the allegations of the Shepards' complaint, a claim of bodily injury due to accident could be possibly spelled out, the *Page 227 
defendant insurance company was required to undertake a defense for the defendant in that case.
It must be conceded that the allegations of bodily injury in the prior Shepard case are tenuously set forth. And it might well have been that the claim of nervous reaction from the vibrations would not have been proven under the rule of proximate causation within the range of ordinary danger, as set out in Strazza v. McKittrick, 146 Conn. 714, 717-18. But the liberality of our pleading procedure might reasonably allow evidence to be instituted in an attempt to prove that the plaintiff Norma Shepard sustained a "bodily injury" in the sense that her nervous system had become affected by the vibrations claimed which might have resulted from "improper repair" of the laundry machinery.
But the aspect most pressed by the defendant company is that under no construction of the allegations of the complaint could an "accident" be spelled out. The Missionaries decision, supra, 110, does not go into this issue, since the facts in that case allege, in substance, that the plaintiff was injured "when he fell into the unguarded ditch which . . . [was] negligently caused and allowed to exist on the premises." The defendant herein further raises the issue that no accident occurred on the premises of the laundry, claiming that the policy required that any accident causing bodily injury covered by the policy was required to have occurred on the premises of the laundry. But the definition of hazards in the policy itself defines premises-operations to include "all operations."
The problem of what constitutes an "accident" under a public liability policy has been discussed in numerous cases in other jurisdictions. These cases are not in complete agreement on this point. They do, generally, accept the rule, also stated in *Page 228 Smedley Co. v. Employers Mutual Liability Ins.Co., 143 Conn. 510, 513, that "if the terms [of an insurance policy] are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted. . . . And this rule of construction favorable to the insured extends to exclusion clauses."
In addition to the Missionaries case, supra, the parties, in their briefs, have referred to certain Connecticut cases. The decisions therein are based on different factual circumstances, involving intentional acts in the operation of motor vehicles. The precise issue has been dealt with, however, in numerous cases in other jurisdictions. In Vappi Co. v.Aetna Casualty Surety Co., 348 Mass. 427, 428
(1965), the question was whether the defendant insurance company had a duty to defend the plaintiff under a policy wherein it was required to pay all sums which the insured became "legally obligated to pay as damages because of injury to . . . property . . . caused by accident." In that case, the allegations of the complaint claimed, inter alia, damages for injuries caused by the insured's negligence "in failing to take precautions to prevent the diversion of surface water and harmful results from vibrations." Id., 431. The opinion (p. 432) gives the following definition of "accident": "Unintended or unforeseen consequences of reckless or negligent acts, and even of intentional acts, at least if not undertaken `with malice or intent to injure' the person or property hurt (see the D'Amico case,345 Mass. 218, 223-224), may be within the definition of `accident.'"
In Taylor v. Imperial Casualty Indemnity Co.,144 N.W.2d 856 (S.D. 1966), the action was based upon a claim that the defendant company had failed to defend the plaintiff in an action for injunctive relief and damages. The complaint in the original *Page 229 
action alleged "a condition of a continuing nature in that gasoline steadily and continuously seeped into the boiler room of the telephone company building thereby creating a fire hazard and endangering the safety of persons in the building and others passing on adjacent streets." Id., 858. The company had refused to defend on the ground that the leaking and seepage of gasoline had continued for a long period of time and that such a long continuing nuisance could not be termed an accident. The decision therein states (p. 859): "We affirm the trial court's judgment of coverage based upon the findings that the leaks in the underground tank and the escape and seepage of gasoline were the result of negligence and that the unintended consequences were caused by accident. Injuries are caused by accident according to the quality of the result rather than the quality of the causes."
Another definition of accident is set out in HardwareMutual Ins. Co. v. C. A. Snyder, Inc., 242 F.2d 64,68 (3d Cir. 1957): "`Accident' is a word of broad scope and includes many unfortunate occurrences not anticipated in the ordinary course of affairs. The wilful act is not embraced by the word, but the negligently-caused happening is understood to be an `accident.'" Another case in point is KoehringCo. v. American Automobile Ins. Co., 353 F.2d 993
(7th Cir. 1965), where the defendant company had refused to defend the plaintiff in a previous action on the ground that there was no accident within the terms of the policy to the plaintiff insured. Here the "accident" involved the operation of hydraulic cylinder ram jets in two concrete mixers, causing them to break down. The opinion states (p. 996): "We think it evident that in the context in which it is used in the policy provision here involved . . . the word `accident' refers to the event or occurrence which produced the damages *Page 230 
and does not require that the conduct of the insured upon which the liability for the damages is predicated — here the intentional installation of a certain type of hydraulic cylinder which happened to prove inadequate — be `accidental' in the sense of an involuntary or unintentional act of the insured. But if there be ambiguity or uncertainty in this respect it is to be resolved in favor of coverage."
Another case which merits citation because of its somewhat analogous fact situation is Myrtle Point
v. Pacific Indemnity Co., 233 F. Sup. 193 (1963). The case involved the claimed use of malfunctioning or inadequate apparatus in a sewage disposal plant. The court therein held (p. 197) that negligent acts in using such apparatus "in absence of intent to cause harm resulting in damage, do not in and of themselves negate a causation by accident." InMoffat v. Metropolitan Casualty Ins. Co., 238 F. Sup. 165
(1964), the defendant insurance company was being sued because of its failure to defend the plaintiff in certain trespass actions brought against it involving smog from culm banks. Again the issue was whether the claimed property damages were caused by accident. The opinion contains a lengthy analysis of what constitutes an accident under a liability insurance policy.
In summary, therefore, it must be concluded that although the allegations of the complaint on the issue of bodily injury caused by accident are possibly gossamer thin, there was at least the possibility that the plaintiff Norma Shepard, in particular, would prove that the nervous condition she claimed resulted from the continued vibrations of the machinery on the laundry premises. As is brought out also in Moffat v. Metropolitan Casualty Ins. Co.,
supra, 175, if the defendant insurance company was in doubt it could have defended with the understanding that coverage was not admitted. On the *Page 231 
other hand, "[i]f it elects not to defend, it does so at its peril. . . . One of the perils is the plasticity of modern pleading." Ibid. See also the decision rendered in the United States District Court for Connecticut, Allstate Ins. Co. v. LumbermensMutual Casualty Co., 204 F. Sup. 83 (1962), which likewise discusses the undoubted dilemma in which an insurance company finds itself when called upon to defend an action which it does not believe is covered by the terms of the policy issued.
The holdings in the following cases are also in point in upholding actions against the defendant insurance companies for failure to defend a prior action brought against a plaintiff insured. ShelbyMutual Ins. Co. v. Ferber Sheet Metal Works, Inc.,156 So.2d 748 (Fla.Dist.Ct.App. 1963); Travelers
v. Humming Bird Coal Co., 371 S.W.2d 35 (Ky. 1963); Corbetta Construction Co. v. MichiganMutual Liability Co., 20 App. Div. 2d 375 (N Y 1964); Murray v. Landenberger, 5 Ohio App.2d 294
(1966); Penley v. Gulf Ins. Co., 414 P.2d 305 (Okla. 1966); American Employers Ins. Co. v. Knox-TennEquipment Co., 52 Tenn. App. 643 (1963); MassachusettsBonding Ins. Co., 400 S.W.2d 20
(Tex.Civ.App. 1965).
The evidence was that the plaintiff herein had settled the previous Shepard case brought against it by the payment of $500 to Norma Shepard, in settlement of all claims. This amount, under the circumstances, would appear to have been a reasonable settlement. In addition, the plaintiff herein seeks reimbursement for legal services incurred in defending the Shepard action. The attorney who represented the plaintiff in that action testified herein as to the services rendered. The case was settled after discussions with the trial judge, and it does not appear that trial actually was begun. The court finds that the sum of $500 would be a reasonable *Page 232 
attorney's fee for the services rendered to the plaintiff in defending and settling the previous action.
 The court, therefore, enters judgment in favor of the plaintiff in the sum of $1000 plus interest on $500 thereof from June 25, 1959.