Marshall E. Livingston, J.
This motion for declaratory judgment is brought by Lipton because of the disclaimer by Liberty, and its refusal to defend Gioia in plaintiff’s underlying action for damages, both direct and consequential, for breach of warranty and negligence in a products ’ liability situation.
The motion seeks an adjudication of the rights and legal obligations of the parties with respect to coverage under certain insurance policies for damage claimed by Lipton. The action seeks a declaration that the policies cover the occurrences out of which the underlying action arose and that Liberty pay plaintiff’s expenses, disbursements and counsel fees incurred in the prosecution of this action.
In addition, in its answer to Lipton in this action, Gioia has cross-claimed against Liberty. It also seeks a determination that the alleged losses by Lipton are covered by the Liberty poli *201 cíes. It asks judgment that Liberty is obligated to defend it in the primary action and further that it be reimbursed for the expenses it has incurred to date in both suits from the date of disclaimer, March 18,1971.
Such is the legalistic background of the instant controversy. A look at the facts should serve to put the problem into focus.
For many years Lipton has manufactured, distributed and sold food products for human use, including a line of some six dried soup mixes which are manufactured at its plant in Albion, New York. Grioia likewise has engaged in the manufacture, distribution and sale, among other things, of enriched egg noodle .and macaroni products, both of which were purchased by Lipton from Grioia in large quantities for use as ingredients in all six of Lipton’s dried soup mixes.
Lipton claims that the Grioia enriched egg and macaroni products used in its soup mixes during 1969 and 1970 were in fact contaminated with and contained salmonella bacteria which cause acute food poisoning when consumed by humans. When this was first discovered in early 1970, Lipton destroyed large quantities of the alleged contaminated mixes, the G-ioia ingredients on hand, recalled from the market its soup mixes believed to be contaminated, and gave widespread notice to the public and the trade of its predicament. This resulted, says Lipton, in substantial property damage, both direct and consequential, including loss of profits, good will and expenses in connection with the occurrence.
Claims were made against Gioia, and an action was started in February, 1971. Gioia turned the summons and complaint over to Liberty, its products liability carrier, and Liberty promptly, by letter on March 18, 1971, confirmed its oral disclaimer of March 17,1971, on the ground of “ no coverage ” under the policies by which Liberty insured Gioia. The summons and complaint were returned, and Gioia retained its own counsel.
The policies which were in effect during 1969 and 1970 were denominated by Liberty as follows:
Policy Title Effective Dates
KA1-181-010446-297 Special Multi-Peril Oct. 1, 1967-1970
LE1-181-010446-309 Umbrella Excess Oct. 1, 1968-1969
LE1-181-010446-319 Umbrella Excess Oct. 1, 1969-1970
The Special Multi-Peril (SMP) policy period included the time during which claim has been made by Lipton from Gioia. The two Umbrella Excess Liability policies (Excess Policies) are identical. On October 1,1969, Liberty furnished to Lipton a “ Certificate of Insurance ” stating that Gioia was insured by *202 Liberty until October 1, 1970, in accordance with the terms of the policies listed above. Thus there is no dispute here as to the provisions of the policies. The SMP policy limit for property ¡damage was $100,000 and the Excess Policy limit was $1,000,000.
The SMP policy pontained several endorsements, but only the pertinent parts wherein Liberty afforded Grioia liability coverage under section II of the policy and whereunder Lipton makes claim against Grioia will be considered. Endorsement MLB-2Ó0 (Ed. 10-66) says:
“ 1. COVERAGE C-BODILY INJURY AND PROPERTY DAMAGE LIABILITY:
“ The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * property damage to which this insurance applies, caused by an occurrence * * * and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account-of such * * * property damage, even if any of the allegations of the suit are groundless # # *
‘ ‘ Exclusions
‘ ‘ This insurance does not apply
“ (a.) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured’s products or a warranty that work performed by_ or on behalf of the named insured will be done in a workmanlike manner * * *
“ (k) to * * * property damage resulting from the failure of the named insured’s products * * * to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications or advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to * * * property damage resulting from the active malfunctioning of such products or work * # #
“ (n) to damages claimed for the withdrawal, inspection * * * or loss of use by the named insured’s products * * * or of any property of which such products * * * form a part, if such products * * * axe withdrawn from the market *203 or from use because of any known or suspected defect or deficiency therein; ” (emphasis supplied).
The SMP policy also contains the following definitions on page 5 thereof:
“‘completed operations hazard’ includes * * * property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the * # * property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. ‘ Operations ’ include materials, parts * * * furnished in connection therewith * * *
“ (3) when the portion of the work out of which the * * * damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project * * *
‘ ‘ ‘ damages ’ includes * * * damages for loss of use of property resulting from property damage * * * “ ‘ occurrence ’ means an accident * * * which results * * * in * * * property damage neither expected nor intended from the standpoint of the insured;
‘ ‘ ‘ products hazard ’ includes * * * property damage arising out of the named insured products or reliance upon a representation or warranty made at any time with respect thereto, but only if the * * * property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to Others;
“ < property damage ’ means injury to or destruction of tangible property. ” (emphasis supplied).
The Excess Policies provide on page 1:
“ I COVERAGE-EXCESS LIABILITY
“ The company will pay on behalf of the insured all sums in excess of the retained limit which the insured shall become legally obligated to pay * * * as damages, direct or consequential, because of * * * “ (b) property damage * * * with respect to which this policy applies and occurring during the policy period.” (emphasis supplied).
Under Definitions Y, on pages 2 and 3, the policies provide:
“ ‘ products-completed operations hazard ’ means (1) the insured products, if the * * * property damage occurs *204 after possession thereof has been relinquished to others, and (2) operations performed by or on behalf of the named insured (wherever performed and whether or not involving the insured’s products), if the # * * property damage occurs after such operations have been completed or abandoned. Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
“ ‘ property damage ’ means (1) loss of, injury to or destruction of tangible property ” (emphasis supplied).
The Excess Policies, on page 1 thereof, contain exclusions from coverage which are similar to the exclusions in the SMP policy. The exclusions provide:
‘ ‘ This policy does not apply * * *
“ (f) with respect to premises alienated by the named insured, work performed by or on behalf of the named insured or the insured’s products * * *
“ (3) to that portion of any damages for which claim is made or suit is brought and which represents the cost (including loss of use) of inspecting, repairing, replacing, modifying or withdrawing any property from the market or use in the interest of preventing accidents which may result from any known or suspected defect therein or in the interest of improving its quality or performance ’ ’.
Liberty concedes that the exclusions in the SMP and Excess Policies are similar and draws no distinction between them.
In sum, then, both Lipton and Grioia assert that the SMP and Excess ¡ Policies were intended to and do cover all Lipton’s alleged damages resulting from the sale to Lipton by Grioia of the claimed contaminated ingredients used by Lipton in its soup mixes.
Liberty, on the other hand, says that every type of loss or damage alleged by Lipton was directlv or consenueutiallv caused by its inspection, wimarawai and loss of use of its products which contained Grioia’s material that is said to have contaminated Lipton’s soups. Such losses, Liberty claims, are specifically and unambiguously excluded from coverage under the policies, and therefore, it has no obligation to defend.
Lipton’s amended complaint alleges three causes of action against Grioia: (1) a cause of action based on express warranty of fitness for human consumption, (2) a cause of action based on warranties implied by law of fitness for human consumption, and (3) a cause of action based upon Grioia’s negligence in manufacturing the products it sold to Lipton for use in its soup mixs.
*205 Lipton then seeks recovery from Gioia in the first cause of action: “11. As a direct and proximate result of the aforesaid contamination and nonconformity with said express warranties ”; in the second cause of action: “ 18. As a direct and proximate result of the aforesaid contamination and nonconformity with said implied warranties ” and in the third cause of action: “ 23. As a direct and proximate result of defendant’s negligence ”.
All three paragraphs conclude as follows: “ (a) plaintiff sustained tangible damage to a large quantity of its six aforesaid dried soup' food products and was required, in the exercise of due care and otherwise, to destroy all quantities of its six aforesaid dried soup food products; (b) plaintiff was required, in the exercise of due care and otherwise, to destroy at substantial expense all enriched egg noodle product and enriched macaroni product purchased from defendant; (c) plaintiff was required, in the exercise of due care and otherwise, to recall from the market at substantial expense all quantities of its six aforesaid dried soup food products and to give public and trade notices of said recall; and (d) plaintiff sustained loss of profits, loss of good will and other consequential damages.”
The portion of the SMP policy relating to the coverage is indicated by reference on Declarations Form GPO 2765 B1 as Part Two thereof. It indicates under section II, ‘ ‘ Liability Coverage — Additional Coverages — Products”. It then indicates endorsements made a part of the policy, and those with which we are concerned are MLB 200, which fixes the extent of. “Coverage C * * * Property Damage Liability”, quoted on page — hereof; MLB 202 — Comprehensive General Liability Insurance Endorsement, which is the same as MLB 200, except that it does not include under coverage the phrase “ and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises ”; and MLB 21 which fixes the limits for property damage of MLB 200 at $100,000 each occurrence and in the aggregate. This indorsement applies to “ (3) all property damage included with the products hazard and all property damage included within the completed operations hazard ’ ’. The definitions of ‘ ‘ products hazard ” and “ completed operations hazard ” are found in the master SMP policy on page 5 and are quoted herein on page 203.
Thus it is clear that ivithin certain limits Liberty intended to give Gioia protection for its legal liability imposed by property damage claims made as the result of breach of warranty, either *206 express or implied, negligence in manufacture of its products, products hazards occurring away from the premises after Grioia’s products were in the possession of others, and completed operations hazards as hereinbefore defined, all arising from an ‘ ‘ occurrence ” or accident resulting in property damage neither expected nor intended by Gioia.
It is also clear that the policies do exclude coverage of certain risks which are clear and unambiguous. Some of these are loading and unloading operations of automobiles, aircraft or boats owned or operated by the insured, operations covered under Workmen’s Compensation, Unemployment or Disability Benefits Law, and demolition operations performed by or on behalf of the insured.
Clause (n) of the SMP policy exclusions and clause (f) (3) of the exclusions in the Excess Policies, both quoted herein, are the basis for Liberty’s position of “ no coverage ”, therefore, “ no defense
The carrier’s position may be sustained only if the exclusions relied on clearly and unambiguously relieve it of coverage for any of the items of Lipton’s alleged damage in the underlying action.
It is "noted in this action that Liberty, in answer to Lipton and in reply to Gioia, alleges two affirmative defenses: (1) that clause (n) is applicable and excludes Lipton’s and Gioia’s claim of coverage under the SMP policy, and (2) that clause (f) (3) in the Excess Policies likewise excludes Lipton’s and Gioia’s claim for coverage.
I hold basically that there is an ambiguity surrounding the interpretation of the exclusionary clauses relied on by Liberty to avoid coverage and a defense in the main suit.
It is incredible that Liberty, knowing of Gioia’s need for product liability, sold them policies whose titles alone — “ Special Multi-Peril ” with $100,000 limits and “ Umbrella Excess ” with a $1,000,000, less $25,000 deductible — certainly to an ordinary person or firm conjure up complete and special protection for products liabilities hazards, and then furnished a certificate of such insurance to Lipton, Gioia’s customer, now comes in and says in substance all Lipton’s damages “ are clearly and unambiguously excluded from coverage under these policies ”.
Liberty must prove that its claim óf clear, unambiguous construction of the exclusions was correct. In American Fid. Fire Ins. Co. v. Pardo (32 A D 2d 536), it was succinctly said: “ Any ambiguity in an insurance policy must be construed against the insurer (Greaves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120, *207 125), especially where the ambiguity is in an exclusionary clause (Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386, 390-391). Moreover, when an exclusionary clause is involved the insurer has the burden-.of proving that the occurrence came within the exclusionary clause (Sachs v. American Cent. Ins. Co., 34 Misc 2d 687, affd. 19 A D 2d 538) and that its own construction of the exclusionary clause was the only one that could fairly be placed on it (Sincoff, supra, p. 390).”
The exclusionary clauses relied on by Liberty may fairly be said to limit the pertinent exclusions under the policies to “ that portion of any damages # # * which represents the cost (including loss of use) of inspecting * * * or withdrawing any property from the market or use in the interest of preventing accidents which may result from any known or suspected defect therein ”.
The word “cost ”, however, has a limited meaning. It is only one of the components, or portion of one’s “ damage ”. The policy exclusions considered here do not apply to any damages which do not constitute a “ cost ” of inspection or withdrawal.
The other items of damage, both direct and consequential, alleged by Lipton and unrelated to its actual cost or expense of inspection or withdrawal are all within the coverage afforded by Liberty’s policies. The excluded expenses or costs may be handled on the trial as a separate item as against Gioia, but Liberty will not be responsible for the same in the event of a plaintiff’s verdict.
Therefore, I conclude that Lipton and Gioia are entitled to a declaratory judgment as follows:
1. The Special Multi-Peril and Umbrella Excess policies of Liberty Mutual Insurance Company cover the alleged liability of Alfonso Gioia & Sons, Inc. to Thomas J. Lipton, Inc. in an action now pending in Supreme Court, Monroe County, except for that portion of the plaintiff’s damage which includes the cost of inspection or withdrawal of the alleged contaminated products.
2. Liberty Mutual Insurance Company is obligated to forthwith take over and furnish the defense of the action wherein Thomas J. Lipton, Inc. is plaintiff and Alfonzo Gioia & Sons, Inc. is defendant in Supreme Court, Monroe County.
3. Liberty Mutual Insurance Company is obligated to pay:
(a) the expenses, disbursements and counsel fees incurred by Thomas J. Lipton, Inc. in the prosecution of this action; and
*208 (b) the expenses, disbursements and counsel fees incurred by Alfonso Gioia & Sons, Inc. in defense of this action, and in defense of the action now pending in Supreme Court, Monroe County, wherein Thomas J. Lipton, Inc. is plaintiff and Alfonso Gioia & Sons, Inc. is defendant from March 18, 1971, to the final determination of this action.