OPINION OF THE COURT
Walter M. Schackman, J.
Plaintiff seeks a declaratory judgment against the defendant for improperly disclaiming responsibility under its insurance policy to defend plaintiff in an action brought against it for breach of warranty. Plaintiff is a manufacturer of chemicals including a certain food additive known as Drewmulse 20 which is used in the manufacture of peanut butter. Its purpose is to prevent the oil from separating once the product is finished. This additive is made primarily from coconut oil. Plaintiff also manufactured a similar product known as Drew *504 mulse 200 but its base ingredient was soya oil rather than coconut oil.
It is undisputed that the shipment of Drewmulse in question was made to the John W. Leavitt Company, a manufacturer of peanut butter located in Massachusetts, on or about June 30, 1965 and received on July 7. The shipment was made pursuant to a written agreement dated November 13, 1964 wherein the plaintiff agreed to sell to Leavitt 200,000 pounds of Drewmulse 20. Prior to this shipment other deliveries had been made to Leavitt under this contract. It is also conceded that sometime prior to June, 1965 one lot of Drewmulse 20 and one lot of Drewmulse 200 were mixed together into a 60,000 pound batch. The batch was labeled as if it was all Drewmulse 20. Dr. Bruce Thorp, who was in charge of quality control for plaintiff, learned of the blending of the two products sometime in June, had it tested and then authorized the shipment. The tested product substantially conformed to the analysis of Drewmulse 20 except for the melting point. This product was then used by Leavitt in the manufacture of a substantial amount of peanut butter. Several weeks later, the oil started to separate. Notice was given by Leavitt to the plaintiff of this problem and a meeting was held on September 15, 1965 at plaintiff’s New York office. Drew informed Leavitt’s representatives that there was a difference in this batch of Drewmulse. Subsequent to this meeting, an officer of plaintiff notified its insurance broker of the possibility of a claim.
Leavitt proceeded to sue plaintiff for its damages which were now apparently substantial. There were much correspondence, meetings and interviews between the parties lasting for several years, and it was not until 1967 that the defendant was finally informed that the Drewmulse 20 shipped to Leavitt was a different mix. On May 28, 1968 defendant disclaimed coverage under the policy. Plaintiff secured its own counsel and thereafter settled the case with Leavitt for $115,000, incurring substantial legal fees which it is also seeking here.
The disclaimer was made on several grounds: the sale of Drewmulse 20 with an intentional change of formula; failure to provide information; lack of candor; and assumption of liability by plaintiff in the Leavitt claim. The court finds that although there was timely notice to defendant of the claim, subsequently plaintiff showed a complete lack of candor in its dealings with the defendant. Certainly defendant was entitled to a greater degree of co-operation, in view of the substantial *505 claim by Leavitt, than the general evasiveness by plaintiff during the course of its dealings with the defendant. However, the question as to whether this lack of co-operation was sufficient to permit a disclaimer by defendant need not be determined herein. The court finds that the loss was not the result of an "occurrence” as set forth in Endorsement 4 of the policy in question. Paragraph 3 of Endorsement 4 reads as follows: "3. The word 'occurrence’ includes accident and also means any unforeseen event, or continuous or repeated exposure to harmful conditions which cause physical injury to or physical destruction of tangible property.”
The testimony herein failed to show that the mixing of the two products was accidental. In fact, everything points to the contrary — that it was deliberately done. Plaintiff had knowledge of the changed formula and of the difference in the melting point of this batch but chose to ship this mixture to Leavitt without advising it of those differences and without actually testing the product with peanut butter. Plaintiff attempts to make much of the fact that another peanut butter company had reordered this mix and made no complaints, but this is irrelevant. The evidence in the case is that every peanut butter manufacturer uses a different formula and either Drew should have made a test or notified Leavitt in advance so it could make necessary tests.
The plaintiff urges that this was an "accident” because the exact result obtained was not anticipated. A witness testifying on its behalf claimed the new mix should have been a better emulsifier than the regular Drewmulse 20. However, since no tests were run on peanut butter this testimony was mere speculation. It is not necessary for plaintiff to have foreseen the exact occurrence which took place, but it is sufficient that it was reasonably foreseeable that a problem could result. Having deliberately shipped the different mix, Drew must bear the consequences of its act. In Matter of Croshier v Levitt (5 NY2d 259, 262) the Court of Appeals stated, "No all-inclusive definition of 'accident’ is possible, nor any formulation of a test applicable in every case, for the word has been employed in a number of senses and given varying meanings depending upon the relevant contest.” An excellent definition is found in the dissent in the same case (p 269), "[a]n event of an unfortunate character that takes place without one’s foresight or expectation, an undesigned sudden event, a mishap, a mischance, a calamity of catastrophy, a happening not in the *506 usual course; fortuitously, unforeseen and without cause (Webster’s Standard Dictionary, Oxford, Funk & Wagnall’s).”
It must be borne in mind that in construing the policy it must be examined as any contract. In City of Fulton v Great Amer. Ind. Co. (11 Misc 2d 536, 541, affd 7 AD2d 832) the court states, "It is equally well established that, in construing a policy, the guide of the courts must be the reasonable expectation and purpose of ordinary business men when making such a contract” (to the same effect see Lewis v Ocean Acc. & Guar. Corp., 224 NY 18; Matter of Masse v Robinson Co., 301 NY 34). Using this approach it is apparent that this was not an "occurrence” or "accident” within the meaning of the policy. Had there been clear proof that these products were mixed accidentally and shipped without knowledge of any difference in the products, plaintiff’s argument would have merit. However, under the circumstances herein I find there was no "accident” or "occurrence” within the meaning of the policy in question.
Plaintiff also argues that the disclaimer was not timely. It alleges all the facts were with the defendant by no later than May, 1967 but defendant did not disclaim until May, 1968. Assuming defendant had full knowledge of all the facts in May, 1967 plaintiff was not in any way prejudiced by the delay. Plaintiff’s case with Leavitt was not settled until December, 1972 and there is no showing that plaintiff incurred any additional liability or was in any way prejudiced because of the alleged delay.
Judgment for the defendant, dismissing the complaint.