WILLETS POINT CONTRACTING CORPORATION, Respondent, v HARTFORD INSURANCE GROUP, Appellant; HEMPSTEAD T.W. CORPORATION et al., Respondents.

Second Department, June 23, 1980

APPEARANCES OF COUNSEL

*Michael F. Sheehan (James M. O'Brien* of counsel), for appellant.

*Ressa, Nappi & Weinig (Harvey Weinig* of counsel), for Willets Point Contracting Corporation, respondent.

*Edward G. McCabe, County Attorney (Robert O. Boyhan* of counsel), for County of Nassau, respondent.

### OPINION OF THE COURT

MANGANO, J.

This is a declaratory judgment action in which plaintiff Willets Point Contracting Corp. (Willets) seeks a determination that defendant the Hartford Insurance Group (Hartford) is required, pursuant to two contracts of insurance, to defend and indemnify it in an action instituted by the Hempstead T.W. Corp. (Hempstead) against Willets and the County of Nassau.

The principal question raised on this appeal is whether Hartford was obligated to defend and indemnify Willets under its policies of insurance.

In 1975 Willets entered into a contract with the County of Nassau to do certain repair and resurfacing work along Peninsula Boulevard, Hempstead, New York, known as the "Horsebrook Drain Project." Willets applied to Hartford for liability coverage and obtained two policies, i.e., a general liability policy for the period of January 20, 1975 to January 20, 1976 and an "umbrella liability policy" for the period of May 8, 1975 to January 20, 1976. Willets commenced its work in 1975 and it subsequently completed said work, receiving a certificate of completion from the County of Nassau on October 25, 1976.

Pursuant to the terms of the contract between Willets and the County of Nassau, the contractor was required to maintain the means of ingress and egress to each owner's property abutting the construction site.

On November 20, 1975 Hempstead, the owner and operator

of a gas station located along the route where Willets was performing its work, served a notice of claim upon the County of Nassau seeking monetary damages for loss of business profits as a result of the public being denied ingress and egress to its station.

On January 23, 1976 Hempstead commenced an action against Willets and the County of Nassau seeking monetary damages for the loss of said business profits resulting from the alleged failure of Willets to maintain ingress and egress to Hempstead's gas station as was required by the terms of Willets' contract with the County of Nassau. Both defendants served their answers and the defendant County of Nassau cross-claimed against Willets in the event any judgment was rendered against the county.

Willets demanded that Hartford honor the terms of the insurance policies and defend and indemnify it in the action commenced by Hempstead. When Hartford refused to defend Willets under either the general liability policy or the umbrella policy, Willets commenced the instant declaratory judgment action, *inter alia,* against Hartford.

The comprehensive general liability insurance policy between the parties stated:

"The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

"Coverage A—*bodily injury or*

"Coverage B—*property damage*

"to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false, or fraudulent * * *

" 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured* * * *

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period".

The general coverage provisions are subject to the following pertinent policy exclusions:

"(m) *to loss of use of tangible property which has not been physically injured or destroyed resulting from*

"(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or (2) *the failure of the named insured's* products or *work performed by* or on behalf of *the named insured to meet the level of performance,* quality, fitness or durability warranted or *represented by the named insured"* (emphasis supplied).

■■ Hartford maintains that the actions complained of in the suit instituted against Willets and the County of Nassau do not constitute an "occurrence" within the terms of the policy and further that exclusion "(m)" specifically relieves it of the obligation to defend the insured. Special Term rejected both of these arguments. We reverse.

The policy of insurance in the instant case requires the insurer to "pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because * * * of *bodily injury* * * * or *property damage* to which the insurance applies, caused by an *occurrence,* * * * and * * * to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent".

An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured".*

The term "property damage", as defined in the policy, includes "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period".

The gravamen of Hempstead's complaint is the failure of Willets to live up to the terms of its contract with the County of Nassau in that Willets failed to provide abutting landowners along the project site with ingress and egress to their property.

The first question to be resolved is whether the damage to Hempstead's property was caused by an "occurrence", within the meaning of Hartford's policy, thus requiring the latter to defend and indemnify Willets.

In applying the policy definition of "occurrence" to the actions complained of by Hempstead, i.e., the blocking of ingress and egress, we must determine whether the acts of Willets in excavating, may nevertheless be considered an occurrence causing damage to Hempstead's property within the coverage of the policy.

In the landmark case of *McGroarty v Great Amer. Ins. Co.* (43 AD2d 368, affd 36 NY2d 358) the question was whether intentional acts in deliberately excavating a parcel of land adjacent to an individual's property despite warnings of possible damage could be considered an "accident." The Court of Appeals adopted a "transaction as a whole" test in determining whether the term "accident" is applicable to a given situation and concluded that although the acts complained of were intended the resulting damage to the plaintiff's building was not, and therefore, the damage was an "accident".

In the case at bar, clearly it was both the intent of Willets and its obligation under its contract with the County of Nassau to excavate in front of Hempstead's property. There is, however, no indication that it in any way expected or intended to damage Hempstead's business by blocking ingress and egress to its property. Thus, the damage complained of may be deemed an "occurrence", and thus within the property damage coverage of Hartford's policy.

Having determined that the acts complained of are an "occurrence", we must next look toward the specific allegations in the complaint of Hempstead vis-à-vis the exclusions contained in the general liability policy issued by Hartford. If the allegations contained in the complaint fall within a specific exclusion, Hartford will be relieved of its duty to defend.

The complaint of Hempstead sounds in breach of contract. Hempstead alleges that the agreement between Willets and the County of Nassau required that Willets maintain egress or ingress to abutting landowners during the course of excavation along Peninsula Boulevard. The allegations of the complaint in no way allege any form of tortious conduct on the part of Willets in the performance of its work but merely seek to rely on the contract provisions between Willets and the county as to ingress and egress.

Exclusion "(m)", relied on by Hartford, provides that there shall be no coverage for the "loss of use of tangible property which has not been physically injured or destroyed resulting from * * * the failure of the * * * work performed by or on

behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*".

■ It is clear that cast upon the insurer is the burden of proving that the acts complained of come within the exclusion of the policy. As the Court of Appeals observed in *International Paper Co. v Continental Cas. Co.* (35 NY2d 322, 325): "if the insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation."

■ An examination of exclusion "(m)" reveals a clear and unambiguous desire by the insurer to exclude from the coverage damages arising from the breach of representations or warranties made by the named insured as to the level of performance of its work. The complaint in the action brought by Hempstead is subject to but one interpretation. Hempstead is seeking the benefit of the contractual representations or warranties made by Willets to the county, i.e., that in performing its work it would maintain ingress and egress to abutting property owners.

The complaint in the underlying action sounds in breach of contract only and thus clearly seeks to recover for damages caused in a manner outside the coverage of Hartford's general liability policy. The insurer having met the test set forth in *International Paper Co. v Continental Cas. Co. (supra),* there is no duty upon Hartford to provide Willets with a defense under the general liability policy.

We note that Hartford is also not required to defend or indemnify Willets under the "umbrella liability policy" for two reasons. First, because unlike the general liability policy, the definition of property damage as contained in the umbrella policy provides coverage for "injury to or destruction of tangible property" whereas the definition of property damage contained in the general liability policy is broader in that it provides for "loss of use of tangible property which has not been physically injured". Since the claimed damage to Hempstead's property is loss of business profits only, no coverage would lie. Also no coverage would lie under the umbrella policy because the maximum possible "ultimate net loss" herein is not in excess of the general liability policy's retained limits.

DAMIANI, J. P., TITONE and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered December 20, 1979, reversed, on the law, without costs or disbursements, and it is declared that the appellant is not required to defend and indemnify the plaintiff in an action instituted by Hempstead T.W. Corp. against it and the County of Nassau.