**AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellant, Cross-Appellee,**

v.

**GENERAL TIME CORPORATION and Talley Industries, Inc., Defendants-Appellees, Cross-Appellants.**

Cal. Nos. 145, 281, Dockets 82–7172, 82–7194.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1982.

Decided March 29, 1983.

Joseph G. Gorayeb, New York City (Seaman, Williamson, Gorayeb & Tidd, New York City, of counsel, and Peter W. Williamson, New York City, on the brief), for plaintiff-appellant, cross-appellee.

Thomas F. Reddy, Jr., New York City (Pennie & Edmonds, New York City, of counsel), for defendants-appellees, cross-appellants.

Before KAUFMAN, VAN GRAAFEILAND and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Aetna Casualty & Surety Company (Aetna), General Time Corporation (GT), and GT's parent corporation, Talley Industries, Inc. (Talley), cross-appeal from a judgment of the United States District Court for the Southern District of New York granting Aetna a recovery of $832,864.99 against GT and Talley. We affirm in part and reverse and remand in part.

In 1970, Flair Manufacturing Company sued GT for breach of warranty because of defects in electric motors sold by GT to Flair. Flair used the motors as component

parts of zone valves in radiators which it manufactured. In 1976, the United States District Court for the Southern District of New York, Werker, J., found GT liable and awarded Flair approximately $1,127,000 in damages. This amount included $657,-920.40 for lost profits attributable to the defective motors.

GT had two liability insurance policies with Aetna, a Comprehensive General Liability Policy, with limits of $100,000, and an Excess Indemnity or Umbrella Policy with limits of $5,000,000 and a deductible of $25,-000. Asserting lack of coverage, Aetna defended the Flair action under a reservation of rights. After judgment was entered, the case was settled for $1,180,000. Aetna contributed $730,000, reserving its right to disclaim coverage, and GT contributed $450,-000, reserving its right to demand coverage.

Aetna then commenced this action to recover its $730,000 contribution, and GT counterclaimed to recover the $450,000 it had contributed. On Aetna's motion for summary judgment, the district court, Sand, J., held in part that Flair's claim for lost profits was not covered by the policies. Following a bench trial on the remaining issues, Judge Sand held in part that the damage to Flair's zone valves, which resulted from the incorporation into them of GT's defective motors, was an "occurrence", as that term was used in the policies. We agree with the second holding, but disagree with the first.

■ In finding that the damages at issue resulted from an occurrence, Judge Sand did not err in taking the law of New York as his guide. This is a diversity action. Accordingly, the district court was required to apply the choice of law rules of New York, the forum State. *Krauss v. Manhattan Life Co.,* 643 F.2d 98, 100 (2d Cir.1981). Because the policies were issued in Connecticut, the executive offices of the parties were located there, and the General Liability Policy provided that the location of the risk was GT's Stanford's office, New York courts ordinarily would choose to apply Connecticut law. *Steinbach v. Aetna Casualty & Surety Co.,* 81 A.D.2d 382, 385–

86, 440 N.Y.S.2d 637 (1981). However, if there is any Connecticut law relating to the issues herein, it has not been revealed. Under circumstances such as these, the New York courts would presume that the law of Connecticut is the same as that of New York, and the district court might properly do the same, especially where, as here, the New York law is consistent with that of most other jurisdictions. *Ogden Development Corp. v. Federal Ins. Co.,* 508 F.2d 583, 585 (2d Cir.1974); *Gediman v. Anheuser Busch, Inc.,* 299 F.2d 537, 544 n. 6 (2d Cir. 1962).

■ Aetna's policies insured GT for property damage caused by an "occurrence" and defined "occurrence" in substance as an "accident" resulting in property damage "neither expected nor intended" from the standpoint of the insured. The term "accident" must be construed as the ordinary person or businessman would construe it when purchasing insurance coverage, *Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 676–77, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976); *Arthur A. Johnson Corp. v. Indemnity Ins. Co.,* 7 N.Y.2d 222, 227, 196 N.Y.S.2d 678, 164 N.E.2d 704 (1959), *i.e.,* as meaning an "unexpected, unfortunate occurrence", *id.* at 228, 196 N.Y.S.2d 678, 164 N.E.2d 704. "To the average person an accident—the results of an act—is something which was not done 'on purpose'." *Wolk v. Royal Indemnity Co.,* 27 Misc.2d 478, 484, 210 N.Y.S.2d 677 (1961). The transaction giving rise to the loss must be examined as a whole, *Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 166, 133 N.E. 432 (1921), and, "regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute an accident." *McGroarty v. Great American Ins. Co.,* 36 N.Y.2d 358, 364–65, 368 N.Y.S.2d 485, 329 N.E.2d 172 (1975).

The district court found that "GT neither intended nor expected its motors to malfunction and that the damage to Flair's zone valves was an 'occurrence' within the meaning of the policies." This was a factu-

al finding. *Id.* at 363, 368 N.Y.S.2d 485, 329 N.E.2d 172. Since it was not clearly erroneous, it is affirmed.[1]

■ However, the district court's interpretation of the term "property damage", which eliminated as an item of damage the loss of profits resulting from the physical injury to Flair's property, is unsupported, not only by the law of New York, but of most other jurisdictions as well. The definition of "property damage" in Aetna's General Liability Policy is patterned after the definition contained in the 1966 revised Standard Comprehensive General Liability Policy, prepared by the Mutual Insurance Rating Bureau and the National Bureau of Casualty Underwriters. 3 Long, *The Law of Liability Insurance,* App. B § 1, at App.–30 (1981). "It is an established principle that consequential or intangible damages, as well as physical damages to other property, are within the terms of such an insuring agreement." 2 Long, *supra,* § 11.09, at 11–51 (1982). *See also* Henderson, *Insurance Protection For Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 445 (1971).

A decisive New York case on this point is *Thomas J. Lipton, Inc. v. Liberty Mutual Ins. Co.,* 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974). Alfonso Gioia & Sons, Inc., the insured in that case, was a manufacturer of egg noodles and macaroni. Gioia was sued by Lipton, which had purchased defective Gioia products and incorporated them in Lipton's own soup mixtures. Lipton's suit sought recovery for direct damage to its mixtures and also for consequential damages, including loss of profits and good will. When Liberty Mutual Insurance Co., Gioia's insurance carrier, disclaimed coverage, Lipton brought a declaratory judgment action seeking a specific declaration that coverage existed under Liberty's policies for the losses alleged.

Former Justice Marshall E. Livingston, in an opinion reported at 71 Misc.2d 199, 335 N.Y.S.2d 853 (1972), held that, except for the cost of inspecting and withdrawing the contaminated products, which cost, he concluded, was specifically excluded from coverage, "[t]he other items of damage, both direct and consequential, . . . are all within the coverage afforded by Liberty's policies." *Id.* at 207, 335 N.Y.S.2d 853. The Appellate Division affirmed without opinion. 41 A.D.2d 1029, 346 N.Y.S.2d 216 (1973). The Court of Appeals modified the orders of the Appellate Division "to declare that all claims for damage asserted by Lipton against Gioia in the damages action fall within the coverage of both the multi-peril and the umbrella policies" and affirmed. 34 N.Y.2d at 361, 357 N.Y.S.2d 705, 314 N.E.2d 37. *See also International Hormones, Inc. v. Safeco Ins. Co.,* 57 A.D.2d 857, 394 N.Y.S.2d 260 (1977), affirming an unreported Nassau County Supreme Court opinion, No. 11870/75, which considered loss of good will as a possible item of damage.

■ Of course, there can be no recovery for intangible losses unless there has been actual physical damage to property other than the property of the insured. *Advanced Refrigeration & Appliance Co. v. Ins. Co. of North America,* 42 A.D.2d 484, 486, 349 N.Y.S.2d 195 (1973); *County of Monroe v. Travelers Ins. Co.,* 100 Misc.2d 417, 422, 419 N.Y.S.2d 410 (1979) *aff'd,* 75 A.D.2d 1025, 429 N.Y.S.2d 336 (1980); *Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life & Casualty Co.,* 524 F.Supp. 574, 577 (E.D.N.Y.1981). However, that is not the situation in the instant case.

■ Aetna's Umbrella Policy specifically defined property damage to mean "injury

---

1. The case of *Drew Chemical Corp. v. Fidelity and Casualty Co. of New York,* 96 Misc.2d 503, 413 N.Y.S.2d 538 (1976), *aff'd,* 60 A.D.2d 552, 400 N.Y.S.2d 334 (1977), *aff'd,* 46 N.Y.2d 851, 414 N.Y.S.2d 515, 387 N.E.2d 226 (1979), which Aetna asserts is "virtually on all fours" with the instant case, is clearly distinguishable. In that case, the insured, a chemical manufactur-er, deliberately mixed an untested food additive made primarily from soya oil with an additive made primarily from coconut oil which it had contracted to furnish the buyer. In the instant case, the insured furnished what the buyer ordered, but the product did not perform according to expectations.

to or destruction of tangible property (other than property owned by the named Insured) and all direct and consequential loss resulting therefrom." This is simply a succinct statement of the general rule of law which New York has adopted and which we here apply. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Northern Grain Co.,* 365 F.2d 361, 366 (8th Cir.1966); *American Motorists Ins. Co. v. Trane Co.,* 544 F.Supp. 669, 695 (W.D. Wisc.1982); *Central Armature Works, Inc. v. American Motorists Ins. Co.,* 520 F.Supp. 283, 289 (D.D.C.1980); *Space Conditioning, Inc. v. Ins. Co. of North America,* 294 F.Supp. 1290, 1294 (E.D.Mich.1968), *aff'd,* 419 F.2d 836 (6th Cir.1970); *Safeco Ins. Co. v. Munroe,* 165 Mont. 185, 192–93, 527 P.2d 64, 68 (1974); *Labberton v. General Cas. Co.,* 53 Wash.2d 180, 186–87, 332 P.2d 250, 254–55 (1958); *General Ins. Co. of America v. Gauger,* 13 Wash.App. 928, 931–33, 538 P.2d 563, 566 (1975).

Our decision on the foregoing issues makes it unnecessary for us to consider other arguments of the parties. We affirm the judgment of the district court except for that portion which is based upon the denial of coverage for loss of profits. That portion which denies coverage for loss of profits is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion. Costs to defendants-appellees.

IRVING R. KAUFMAN, Circuit Judge (concurring):

I concur in the result reached by the majority, but for slightly different reasons. The dispute in this case is not whether Aetna's insurance policies extended coverage against consequential damages. Rather the question is whether General Time's liability to Flair for the latter's lost profits was the type of consequential damage against which General Time was protected pursuant to the terms of the contracts. Since both the insurance agreements and the law are unclear on this disputed issue, I

would adhere to long-standing and widely accepted principles of contract interpretation, and construe the terms of the policies against the insurer.

The umbrella policy expressly covered consequential losses resulting from damage to the insured's property. " '[P]roperty damage' means injury to or destruction of tangible property ... and all direct and consequential loss resulting therefrom." [1] The disagreement between the parties focuses on whether those consequential damages which are covered by this clause include losses resulting from liability to a third party for lost profits. Unfortunately, the policy fails to shed any light on this question, and the intention of the parties at the time the agreement was entered into is also obscure.

In the absence of meaningful guidance from the policies, we look to state law to determine whether consequential damages clauses have been interpreted to encompass lost profits. Connecticut law, which, as the majority notes is controlling, has not resolved this issue. In my view, the law of New York is also of little aid.

In *Thomas J. Lipton, Inc. v. Liberty Mutual Ins. Co.,* 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974), the Court of Appeals affirmed a lower court judgment which awarded consequential damages, including lost profits, to the insured in an action against the insurer. Neither the Court of Appeals, nor the Supreme Court, however, focused on the issue whether lost profits could be treated as insured consequential damages. Indeed, the dispute in *Lipton* did not center on coverage of profits, but rather on whether all damages resulting from a recall of Lipton's products were excluded pursuant to a policy provision which purported to limit the insurer's liability in the event of a recall of defective goods. There is no indication in the courts' opinions that they considered whether lost profits could be considered as an insured consequential damage.

---

1. The primary policy contained a slightly different definition of property damage, but Judge Sand ruled that the policies were intended to have coextensive coverage, and the parties do not contest this conclusion.

Fairly read, *Lipton* does not support a claim that New York clearly allows for recovery of lost profits. Indeed, subsequent New York decisions have rejected attempts to recover lost profits in similar circum-stances. For example, in *Willets Point Contracting Corp. v. Hartford Ins. Group,* 75 A.D.2d 254, 259, 429 N.Y.S.2d 230, 233 (2d Dept.1980), *aff'd,* 53 N.Y.2d 879, 440 N.Y.S.2d 619, 423 N.E.2d 42 (1981), the court concluded that lost profits were not covered by an insurance clause which pro-tected against property damage, and ac-cordingly, the insurer had no obligation to defend such a claim. *See also County of Monroe v. Travelers Ins. Co.,* 100 Misc.2d 417, 422, 419 N.Y.S.2d 410, 413 (Monroe Cty.1979) ("Lost profits, delay and perform-ance of extra work are not encompassed within the term property damage....") In light of these inconsistent decisions, and absent clear guidance from the Court of Appeals, the issue of lost profits is unre-solved under New York law.

Courts in other jurisdictions have also considered this question, but unfortunately, the case law indicates a marked lack of unanimity. Many courts which have con-fronted the issue have concluded lost profits are not an insured consequential loss from property damage. *See Liberty Mutual Ins. Co. v. Consolidated Milk Producers' Associa-tion,* 354 F.Supp. 879, 884 (D.N.H.1973); *Hartford Accident & Indemnity Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 294 N.E.2d 7, 13–14 (Ill.App.1973); *Geddes & Smith, Inc. v. Saint Paul-Mercury Indemni-ty Co.,* 51 Cal.2d 558, 334 P.2d 881, 885–86 (Cal.1959) (en banc); *see also* 11 Couch on Insurance 2d § 42:402 (1963). Other courts, however, have reached a contrary result. *See, e.g., Central Armature Works v. Amer-ican Motorists Ins. Co.,* 520 F.Supp. 283, 289 (D.D.C.1980); *General Ins. Co. of America v. Gauger,* 13 Wash.App. 928, 538 P.2d 563 (Wash.App.1980).

In the absence of further instruction from the New York courts on this question, we have little basis for concluding that New York law grants General Time the right to recover the amount of its liability to Flair for the latter's lost profits. Since the case law does not clarify the meaning of the words "consequential damages," we are left with nothing more than the ambiguous provisions of the insurance policies.

We, therefore, must turn to the principles dealing with the uncertainty of meaning of provisions in an insurance policy. The law is clear that ambiguities in insurance agree-ments are to be construed most favorably to the insured. Since the insurer is assumed to have control over drafting the contract provisions, it is fair to hold it responsible for ambiguous terms, and accord the in-sured the benefit of uncertainties which the insurer could have, but failed to clarify. Both Connecticut and New York have adopted this hornbook rule of contract in-terpretation. "If the terms of an insurance policy are of doubtful meaning, that per-missible construction which is most favor-able to the insured is to be adopted ...." *Weingarten v. Allstate Ins. Co.,* 169 Conn. 502, 509, 363 A.2d 1055, 1059 (1975) (quoting *Porto v. Metropolitan Life Ins. Co.,* 120 Conn. 196, 200, 180 A. 289, 290 (1935)); *see also Simses v. North American Company for Life & Health Ins.,* 175 Conn. 77, 394 A.2d 710 (1978); *Palace Laundry Co. v. Hartford Accident & Indemnity Co.,* 27 Conn.Supp. 222, 234 A.2d 640 (Ct.Comm. Pleas 1967). "Well recognized is the gener-al rule that ambiguities in an insurance policy are to be construed against the insur-er, particularly when found in an exclusion-ary clause." *Breed v. Ins. Co. of North America,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354, 385 N.E.2d 1280 (1978); *see also Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976); *Thomas J. Lipton, Inc., supra,* 34 N.Y.2d at 361, 357 N.Y.S.2d at 708, 314 N.E.2d at 40. Applying this well ensconsed principle of policy interpretation, I would hold Aetna responsible for the ambiguity in the insurance agreements relating to lost profits, and construe those provisions as affording General Time coverage for its losses resulting from liability for Flair's lost profits.